# Kilbride *v.* Carbon Dioxide and Magnesia Company, Appellant.

*Negligence—Explosives—Carbon dioxide—Usage.*

The unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man.

Failure to do some particular thing which might have prevented an accident, and which is brought to the attention of the party charged with carelessness for the first time only after the accident has happened, is not the test of negligence; the standard of proper care is the observance of prudence as the average prudent man observes it, by following the ordinary usuage of his business.

In an action against a corporation manufacturing carbon dioxide, to recover damages for the death of plaintiff's husband caused by the explosion of a cylinder charged with carbon dioxide, binding instructions should be given for the defendant where the plaintiff produced no evidence whatever that there was anything about the cylinder to indicate that it was defective, or in any way weakened, or that it had been overcharged, and the only evidence relied upon by the plaintiff was that a small number of other cylinders had been returned to defendant with water in them resulting, as claimed, in rust, and that the defendant had not adopted and used a particular method of testing used in England and Switzerland, but not in this country, while the evidence for the defendant was that the cylinder had been bought from a reputable manufacturer, that it had been tested before it was purchased by a very high pressure, and also every time it was charged, that thousands of similar cylinders had been used without accident, and that there was no general usage or custom in this country as to the manner of testing the cylinders.

Argued Jan. 10, 1902. Appeal, No. 194, Jan. T., 1901, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1898, No. 831, on verdict for plaintiff in case of Elizabeth Kilbride v. Carbon Dioxide and Magnesia Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before Audenried, J.

The circumstances of the accident are stated at length in the opinion of the Supreme Court.

The court refused binding instructions for defendant, and submitted the case to the jury.

Verdict and judgment for plaintiff for $6,000. Defendant appealed.

*Error assigned* was in submitting the case to the jury.

*J. Howard Gendell*, for appellant.—Plaintiff was bound to show both the cause of the explosion and that such cause was due to defendant's negligence: East End Oil Co. v. Penna. Torpedo Co., 190 Pa. 350; Spees v. Boggs, 198 Pa. 112; Reeses v. Clark, 146 Pa. 465.

We refer to the following cases of explosions, in which it was held that the burden of proof was on plaintiff: Allison Mfg. Co. v. McCormick, 118 Pa. 519; Augerstein v. Jones, 139 Pa. 183; Simpson v. Pittsburg Locomotive Works, 139 Pa. 245; Gundelsweiler v. Jayne Chemical Co., 161 Pa. 23; Brunner v. Blaisdell, 170 Pa. 25; Earle v. Arbogast, 180 Pa. 409; Bishop v. Brown, 61 Pac. Repr. 50.

The unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business: Titus v. Bradford, etc., R. R. Co., 136 Pa. 618; Northern Central Ry. Co. v. Husson, 101 Pa. 1; Purdy v. Westinghouse Electric & Mfg. Co., 197 Pa. 257; Kehler v. Schwenk, 144 Pa. 348; Ford v. Anderson, 139 Pa. 261; Dooner v. Delaware & Hudson Canal Co., 171 Pa. 581; Keenan v. Waters, 181 Pa. 247; Allison Mfg. Co. v. McCormick, 118 Pa. 519; Frankfort & Bristol Turnpike Co. v. Phila. & Trenton R. R. Co., 54 Pa. 345; Penna. R. R. Co. v. Page, 21 W. N. C. 52.

*Thomas James. Meagher,* with him *Patrick Duffy,* for appellee.

OPINION BY MR. JUSTICE BROWN, February 24, 1902:

John J. Kilbride, the husband of plaintiff, was an employee of the Pennsylvania Railroad Company, and, on January 24, 1898, died, as is alleged, from injuries inflicted by the explosion of a cylinder charged with carbon dioxide, commonly known as carbonic acid gas. This gas is used for charging soda water and other carbonated waters and drinks. The defendant company is engaged in its manufacture in large quantities, and ships tubes or cylinders charged with it to customers throughout the country. On the day of the alleged explosion it had shipped twenty-five of these tubes or cylinders, so charged, from its factory, in the city of Philadelphia, to Brooklyn, via Pennsylvania Railroad. The tubes had been transported by the railroad company across the Schuylkill river to Mantua station, where they were being transferred to another car containing general merchandise, when one of them, according to appellee's contention, exploded as the deceased was about to lay it down in the car in which it was to be taken to Brooklyn, causing concussion of the brain, that resulted in his death when he was entering the hospital. On the trial, the case was submitted to the jury under instructions that, if the death of the deceased was due to the explosion of a defective cylinder, which defendant had negligently failed to test, the plaintiff ought to recover; and there was a finding in her favor.

The contention of the appellant in the court below was, and is now, first, that there was not sufficient proof that the tube had exploded because it had become weakened by rust, as alleged by the appellee, and, secondly, that there was no proof at all of negligence on the part of the company in failing to test it. Assuming that there was sufficient evidence to submit to the jury in support of the allegation that the cylinder had become weakened on the inside at a certain point by rust, and that the explosion was due to its weakened condition there, the only question to be considered is, whether, under the undisputed facts in the case, the defendant was negligent in failing to properly test it.

The learned trial judge, in charging the jury, correctly said there was no evidence that the cylinder had been overcharged,

that the defendant knew of its alleged defective condition, or that there was anything on the outside of it to indicate that it was rusted or corroded on the inside, or in any way weakened. In support of the theory that it must have been rusted, the plaintiff proved that some other cylinders—a small percentage of the whole—had had water in them when returned to the defendant from customers, resulting, as claimed, in rust, after they had been stored for some time; but the jury were told that as to this particular cylinder, there was no evidence that it ever came back with water in it. They were properly reminded that there was no evidence of anything about it indicating that it was defective; but they were also told, "if it was defective and the fact that it was defective was one which the defendant ought to have known," the plaintiff ought to recover.

The burden of proving the negligence charged was upon the plaintiff; but the court, in the absence of any proof that the defendant knew, or ought to have known, that the cylinder was defective, allowed the jury to guess that, if it was, the defendant ought to have known the defect, and was negligent in using it. The undisputed facts are, that this cylinder had been purchased from the National Tube Works, a company of high standing and most extensive business, which had furnished many thousands of the same kind to the defendant and sold to its different customers 150,000 of them, and, with the single exception of this one, none had ever exploded, save as the result of heat; that this one had been purchased only after it had been actually tested by the company that sold it at a pressure of 3,700 pounds to the square inch, at least six times the pressure which was upon it at the time of the explosion, and every time it had been charged it had been subjected to an actual test several hundred pounds greater to the square inch than existed when it was being transported; that, when it was being filled by the filling apparatus, the pressure was always far in excess of that which it sustained when sent out to customers; that thousands of similar cylinders had been used by the defendant, some of them for many years, with perfect safety, subjected to no other test than the one invariably made when they were being filled at the pressure much greater than continued after they were separated from the filling apparatus

and shipped away; and that no one of them had ever exploded before as it is alleged this one did.

There was no proof that there was any general usage or custom in this country as to testing these cylinders; but, on the contrary, there was testimony that none existed here. It is urged, however, that, because a single witness for the plaintiff testified that there was a method of testing them, used in England and Switzerland, it was negligent in the defendant not to have used it here, and that, therefore, the plaintiff ought to recover, though, as the court properly said to the jury, there was no evidence that the cylinder had been overcharged, or that the defendant knew of any alleged defect in it, or that there was anything on the outside of it to indicate that it was rusted or corroded on the inside, or in any way weakened, and, in the face of what we have just called attention to as the test pressure, to which this comparatively new cylinder had been subjected each of the six times it was filled with gas.

No deviation by the defendant from any standard of care observed by those engaged in the same business was shown; no failure to test its tubes or cylinders as others tested theirs in this country was proven; and to hold that, simply because it had not adopted and used a particular method of testing, in use in England and Switzerland, according to the testimony of one witness, and never heard of here, so far as can be learned from what all the others said, would be to declare it to be negligence, in cases like this, not to adopt an appliance that is in exceptional and not in general use; but this is not the law. It is not negligence because a "particular accident might have been prevented by some special device or precaution not in common use:" Northern Central Railway Company v. Husson, 101 Pa. 1. "It is not enough that some persons regard it as a valuable safeguard. The test is general use:" Delaware River Iron Ship Building Works v. Nuttall, 119 Pa. 149. "The unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man:" Titus v. Bradford, etc., Railroad Company, 136 Pa. 618. In the foregoing cases the question of negligence arose between employer and employee,

but " there is no difference between liability to a stranger and to a servant for a man's own negligence or want of skill: " Ardesco Oil Co. v. Gilson, 63 Pa. 146. In Spencer v. Campbell, 9 W. & S. 32, GIBSON, C. J., " put the liability of the proprietors of a steam mill, for damages caused to a customer by the bursting of its boiler, upon the true ground,—want of ordinary care and skill in its management: " Thompson's Commentaries on the Law of Negligence, page 700. See also Dougherty v. Phila. & Reading R. R. Co., 37 W. N. C. 114 ; Losee v. Buchanan, 51 N. Y. 476, and Marshall v. Welwood, 38 N. J. L. 339.

Though it nowhere appears, as stated, that, before this accident, the defendant, or any other person engaged in the same business in this country, had ever heard of the test method used in the two foreign countries, yet the only negligence that the jury could have found it guilty of was its failure to adopt that method. No other was called to their attention by the plaintiff as one which the defendant ought to have used, and there was nothing about the tube to even indicate that it ought to have been sent by the defendant to the National Tube Works to be retested, as others were when there were indications of weakness on the outside. There is nothing more in the case, as presented by the plaintiff, than that, after the unfortunate accident happened, it was discovered the defendant might have used a test method used in a foreign country, which might have prevented the explosion. In Northern Central Railway Company v. Husson, supra, it was said : " Almost all accidents could be avoided if the especial manner of their occurrence could be foreseen ; " and we may add that, after almost every one, theories are advanced as to how it could have been avoided ; but a defendant's liability for negligence is not to be so determined. What would have been wise, simply in view of what is learned after an occurrence like this, is no criterion of care. Failure to do some particular thing which might have prevented an accident, and which is brought to the attention of the party charged with carelessness for the first time only after the accident has happened, is not the test of negligence ; the standard of proper care is the observance of prudence as the average prudent man observes it, by following the ordinary usage of his business : Titus v. Railroad Company, supra. If, having exer-

cised such prudence, unforeseen accidents occur, negligence cannot be imputed to him.

From a review of this whole case, no negligence of the defendant can be discovered; on the contrary, the affirmative proof is, that it had been careful, and the ninth point submitted by it should have been affirmed. The judgment is reversed and is now entered for the defendant.