# Farne *v.* Pennsylvania Lighting Co., Appellant.

*Negligence—Electric lighting company—Custom—Evidence.*

1. A custom that a cradle or similar device was placed around electric light wires to prevent contact with overhanging telephone wires that might drop or sag, cannot be established by the testimony of one witness, who does not explicitly say that there was such a custom, and does not say that electric companies installed the devices generally.

2. Recovery cannot be had from an electric light company, for the death of an employee of a telephone company killed by a wire of the telephone company coming in contact with a charged wire, where there is no testimony that the wire of the light company was charged, but, on the contrary, one of plaintiff's own witnesses testified without contradiction that the wire carried no voltage, and there is evidence that sparks were seen to emanate from a trolley wire to the telephone wire in question.

*Appeals—Withdrawal of motion for judgment n. o. v.—Entry of judgment as basis for appeal.*

3. A defendant has a right to withdraw his motion for judgment n. o. v., enter a judgment on the verdict and take an appeal, and assign as error alleged wrongful instructions given at the trial.

Argued October 5, 1922. Appeal, No. 407, Jan. T., 1922, by defendant, from judgment of C. P. Northumberland Co., Sept. T., 1917, No. 236, on verdict for plaintiff, in case of Bridget Farne v. Pennsylvania Lighting Co. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Trespass for death of plaintiff's son. Before CUMMINGS, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $4,888. Defendant appealed.

*Error assigned* was, inter alia, refusal of binding instructions for defendant, quoting record.

*Charles C. Lark,* for appellant.

*M. A. Kilker,* for appellee.


OPINION BY MR. JUSTICE SCHAFFER, January 3, 1923:

Plaintiff brought suit against defendant to recover damages resulting to her from the death of her adult son and recovered a verdict upon which judgment was entered; defendant brings the case to us for review.

While on the legal questions discussed the case has taken a rather wide range, our study of the record leads to the conclusion that it is within a narrower compass than the briefs indicate and is governed by a few undisputed facts, from which the law does not fix liability on defendant.

Plaintiff's son was employed by a telephone company and engaged in stringing new wires to take the place of old ones which were rusted and worn out; at the particular locality where the accident occurred, he and other workmen were engaged in shortening the span of the telephone wires between poles from about two hundred to one hundred and ten feet. Where the men were working, the telephone company's wires crossed and were above the wires of the defendant lighting company and of those of a trolley company. Plaintiff's son had ascended one of the telephone company's poles to assist his coemployees in stringing the new wires. Immediately before the circumstance occurred which caused his death, one of the new wires had been tied to one of the old ones; this new wire ran to the pole on which decedent was working. For some reason not disclosed with entire clearness, but in all probability from the strain consequent upon stringing the new wire, the old one to which it was tied broke and fell across the wires of defendant and that of the trolley company and became charged with a current of electricity of high voltage, which was communicated to the decedent, who was still mounted on the pole, and he was killed. It is important

to bear in mind that the work being done was for the telephone company and by its employees—decedent being one of them—and not by the defendant; so far as the record discloses, it did not even know the work was in progress.

In her statement of claim, plaintiff set up as the ground of recovery that there was no "guard or cradle or other protecting device provided by defendant so as to prevent loose or sagging telephone wires from coming in contact with its heavily charged electric wires" and because of the absence of such device, the wire of the telephone company, which deceased was handling, "came in contact with the defendant's wire heavily charged with an electric current of high voltage."

On the trial, plaintiff endeavored to show a custom, in instances where telephone lines cross high-powered electric light wires, to provide a so-called cradle or other similar device around the electric light wires to prevent contact with the telephone wires, should they sag or fall. Just whether such a custom, if sufficiently proven, would have availed the plaintiff under the peculiar circumstances here appearing,—that the primary cause of the accident was the lack of care on the part of the employees of the telephone company in dealing with the old worn-out telephone wire and subjecting it to too great strain, —we need not determine, for the reason that the custom was not sufficiently proven. Decedent's brother was the only witness called by plaintiff on this point and testified that in some places they had such devices and in others not. He did not explicitly say there was such a custom, or that electric companies install the devices generally, only rarely, and admitted there was no custom if there was a clearance of five feet or more. He indicated a particular kind of device which, in his opinion, would have prevented the accident, but did not show that it was in general use anywhere. From his testimony, it is apparent the custom he was endeavoring to establish was one to protect against contact by swaying,

sagging or some similar action and not against a broken and fallen wire where there was a span of over two hundred feet. Defendant met the endeavor to prove such a custom by the testimony of electrical engineers and others familiar with the construction of electric wire lines that not only was there no such custom, but that such devices were not practical because of the added danger they brought to the line. The proofs failed to establish such custom of the use of a cradle or other device, under the circumstances here appearing, as would convict defendant of negligence from a failure to follow it. In Kilbride v. Carbon Dioxide, etc., Co., 201 Pa. 552, the action was brought to recover damages for the death of plaintiff's husband, who was an employee not of the Carbon Company but of the Pennsylvania Railroad Company, and it was urged that because a single witness for the plaintiff testified there was a method of testing the kind of cylinders, whose explosion caused the death of the decedent in that case, used in England and Switzerland, it was negligence in the defendant not to have used that method of testing. There we said: "The unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man [citing cases]. In the foregoing cases the question of negligence arose between employer and employee, but there is no difference between liability to a stranger and to a servant for a man's own negligence or want of skill. ......Failure to do some particular thing which might have prevented an accident, and which is brought to the attention of the party charged with carelessness for the first time and only after the accident has happened, is not the test of negligence; the standard of proper care is the observance of prudence as the average prudent man observes it, by following the ordinary usage of his business."

Even if it could be conceded that there was sufficient evidence to show a custom to maintain a cradle or some other kind of safety device where wires crossed each other, as they did here, and under circumstances similar to those causing this accident, still plaintiff could not recover under her proofs. There is no testimony that defendant's wires were defectively insulated; all the evidence as to this is to the contrary. There is no proof that there was any current in the electric wires of the defendant at the time of the accident. Plaintiff's witness testified the wires carried no voltage at that time. While this witness was called as under cross-examination, yet his evidence being not controverted, must be accepted as true: Krewson v. Sawyer, 266 Pa. 284. Furthermore, the broken wire fell across both the electric wire and the trolley wire. There is no evidence in the record that sparks emanated from the electric light wire belonging to defendant, on the contrary, the wire chief of the telephone company testified sparks were seen to come from the trolley wire to the broken wire of the telephone company. It will thus be seen the plaintiff failed to substantiate her allegation that the telephone wire her son was handling, came in contact with the defendant's wire charged with an electric current of high voltage. Failing to show that the current of electricity which caused her son's death came from the wires of defendant and affirmatively showing, as she did, that in all probability it came from the wire of the trolley company, she did not establish the liability of defendant.

One other matter remains for disposition. On the argument, appellee moved to quash the appeal, because appellant, after the rendition of the verdict and before judgment, filed a motion for judgment non obstante veredicto and for a new trial, which motions, with leave of court, it subsequently withdrew, and filed a motion for judgment on the verdict. The contention of appellee is, that defendant, having voluntarily withdrawn its motions for judgment non obstante veredicto and for a new

trial, and judgment having been entered on the verdict, there is no basis for the appeal. Appellant had the right to withdraw its motions. The only effect of their withdrawal was to leave the record as it stood prior to their filing; it shows that on the trial a motion was made for binding instructions for the defendant, which the court refused. The questions raised by the refusal of this point are regularly before us. The fact that the defendant entered judgment on the verdict militates against it not at all. Either party may enter judgment on a verdict without prejudice to the right of appeal; frequently in order to get appeals speeded and promptly disposed of, it is necessary for the intending appellant to enter judgment on the verdict.

The first assignment of error covering the refusal of the court to give binding instructions for the defendant is sustained and the judgment is reversed.