James et ux. *v.* Columbia County Agricultural,
Horticultural and Mechanical Association,
Appellant.

Argued November 27, 1935. Reargued March 31,
1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW,
LINN, STERN and BARNES, JJ.

*Frank P. Slattery,* with him *Rutledge Slattery* and
*E. J. Mullen,* for appellant.

*R. S. Hemingway,* for appellee.

OPINION BY MR. JUSTICE DREW, April 20, 1936:

Plaintiffs sued in trespass to recover for personal injuries suffered by Mrs. James as a result of the alleged negligence of defendant. The jury found for each of the plaintiffs, and from the entry of the respective judgments defendant appealed to the Superior Court. The judgments were affirmed: 117 Pa. Superior Ct. 277. We subsequently allowed the present appeals.

Defendant is the proprietor of the fair grounds in Bloomsburg, Columbia County. It conducts the annual county fair. Included within the grounds are numerous exhibition and amusement buildings, in addition to a race track. On September 25, 1930, the annual fair was in progress and plaintiffs were visitors. The horse races had begun. During the course of the first event, a half mile running race, a horse fell and threw its rider. It got up and ran riderless and uncontrolled around the half mile course two or three times, finally jumping the fence which surrounded the track and striking Mrs. James, who was not a spectator at the races, but who was walking with her husband along one of the roadways within the fair grounds.

The statement of claim charged defendant with negligence (1) in permitting the race to be run when the track was wet, muddy, slippery and unfit for racing; (2) in failing to maintain a fence of sufficient height

and strength to keep the horse within the race course; and (3) in failing properly to police and marshal the track. Evidence in support of these allegations was offered by plaintiffs. Contradictory testimony was introduced by defendant. The case was submitted to the jury on all the issues, and the following verdict was returned:

"And now, to wit: October 17, 1933, we, the jurors empaneled in the above entitled case, find the Columbia County Agricultural, Horticultural and Mechanical Association guilty of negligence in not properly marshaling the race track on September 25, 1930, when the running race was run and the horse jumped over the fence and injured Ursula E. James.

"Therefore we award damages as follows: Bartholomew J. James, the sum of $1,000, and Ursula E. James, his wife, the sum of $1,000."

Defendant promptly moved for judgment n. o. v. It argued that the verdict absolved it from all charges of neglect except with reference to the marshaling of the race. Accordingly, it contended that, irrespective of the sufficiency of the evidence in support of plaintiffs' other allegations, the testimony with respect to the alleged negligent marshaling was the only evidence to be considered on its motion for judgment n. o. v., and that that evidence was clearly insufficient to support the verdict based thereon. The learned trial judge felt constrained, however, to consider all the evidence, and, since he believed that it would not have been possible to have given binding instructions for defendant, reasoned that it was likewise impossible to enter judgment n. o. v. The Superior Court was of the same opinion. We think the judgments are erroneous. It is not now necessary to consider the restrictive effect, if any it had, of the verdict that was returned in this case. Although the propriety of the verdict is discussed, we need not, and therefore do not, pass upon that question. A careful consideration of the evidence with respect to the various charges of negligence demonstrates conclusively that plaintiffs

failed as a matter of law to substantiate any of their allegations of neglect. The evidence on all the issues is insufficient to support any verdict for plaintiffs.

Plaintiffs produced several witnesses who testified as to the muddy and slippery condition of the track at the place where the horse fell. Only one witness, however, testified that the condition of the track was such as to make it unfit for running races. This man was a veteran follower of the track and on cross-examination he frankly admitted that he could not recollect ever having heard of a running race being postponed on account of a muddy track. On the contrary, he did testify that he had seen races where both horses and jockeys came in "splattered with mud" and that in some instances it was impossible to tell the number on the horse or on the jockey because of the mud. This same witness testified that it was the rule to run races at post time "regardless of rain, snow, or anything else," and that he had witnessed running races in violent rain storms. He further admitted that some horses were known as "mud horses" because of their superiority on a muddy track. Clearly, this testimony was insufficient to charge defendant with neglect in running the races on the muddy track, and since there was no other evidence adequate to support the allegation of negligence in that respect, the allegation must fail. The evidence produced by plaintiffs itself indicated that races are ordinarily run regardless of the weather or of track conditions.

Equally futile is plaintiffs' evidence in support of their charge that the fence was of insufficient height. The Bloomsburg fence was 36 inches high at the place where the horse jumped over. Plaintiffs singled out the fences surrounding five similar race tracks on other fair grounds in the vicinity and offered testimony to the effect that those fences were at least six inches higher than the fence at Bloomsburg. On the other hand, defendant offered measurements, which were not contradicted, of the height of fences at other similar race

tracks, and the fences were not as high as the one herein involved.  Plaintiffs in no way showed that a fence of 36 inches was insufficient or that the maintenance of such a fence was a breach of the duty of ordinary care.  There was no evidence that a fence of the average height maintained at the other race tracks as to which plaintiffs' witnesses testified would have kept the horse within bounds and thereby prevented the accident.  Without such evidence, it cannot be said that the neglect with which defendant is charged in this respect was responsible for the accident.  Clearly, no liability could be predicated upon the evidence in support of this charge.

We come, then, to a consideration of the evidence in support of plaintiffs' contention that the track was negligently marshaled.  Here again the testimony is remarkably meager and obviously insufficient.  Several witnesses for plaintiffs said that they saw no marshal. The evidence shows that it was customary to have such an official.  Defendant's secretary testified that there was a marshal but that he did not see him about the track at the time of the runaway.  He also admitted that it would be the marshal's duty to do what he could in the event of an accident.  It does not appear, however, that it was any part of that official's ordinary duties to stop runaway horses.  But whether or not the course was properly marshaled is really immaterial in view of the fact that plaintiffs failed to establish any causal connection between the alleged inadequate marshaling and the injuries sustained.  The proximate cause of the injury to Mrs. James was the runaway horse and no negligence of defendant was responsible for the runaway.  A recovery may not be founded upon the mere conjecture that with proper marshaling the horse could have been halted. The marshal may be, as one of plaintiffs' witnesses testified, the "boss of the track," or he may be merely the official to call out the horses for the various events, but, in either case, it is impossible to say that his presence and aid would have prevented the accident.  Plaintiffs

not only failed to prove their charge of improper marshaling, but they also failed to show that the injuries suffered were the proximate consequence of that alleged negligence on defendant's part.

In accordance with the usual requirement, we have viewed the evidence in the light most favorable to plaintiffs. Nonetheless, we are confident of its failure to support any verdict that might have been returned for plaintiffs. A verdict for defendant was clearly required. We are satisfied, as in fact the jury appeared to be, that the evidence of negligence in the maintenance of the fence and in the running of the race under the circumstances was insufficient. It is equally clear that the charge of improper marshaling is inadequately supported. True, Mrs. James was injured, but to impose liability upon defendant would be to hold it liable regardless of its negligence. That cannot be done.

The judgments of the Superior Court, affirming the judgments of the Court of Common Pleas of Columbia County, are reversed, and judgment is herein entered for defendant.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

The only question in this case is whether or not there was sufficient evidence of negligence to warrant its submission to the jury. The trial court held that there was and the Superior Court reached the same conclusion. I think they were right. This court in *McCracken v. Curwensville Boro.*, 309 Pa. 98, 115, 163 A. 217, quoted with approval the following from 26 *R. C. L.*, pages 1067-69, section 75: "A verdict should not be directed if on all the facts and circumstances . . . the evidence is not such that honest minds could reach but one conclusion." The United States Supreme Court laid down the same rule in *McDermott v. Severe*, 202 U. S. 600 (and in other cases therein cited), as follows: "Negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw

from them the inference that there was no negligence. If fair-minded men, from the facts admitted, or conflicting testimony, may honestly draw different conclusions as to the negligence charged, the question is not one of law but of fact, and to be settled by the jury under proper instructions." As to the legal significance of the facts in the instant case, honest minds reached different conclusions. This makes the determination of the issues raised preëminently a jury question. The trial judge submitted the issues to the jury in an accurate and painstaking charge. The jury found for the plaintiff. I agree with the trial judge and the Superior Court that there was sufficient evidence of defendant's neglect of social duty to warrant the verdict returned.

Every human being possessed of sound mind and understanding is legally bound to exercise a certain amount of foresight and care in controlling any animal or instrumentality in his possession. At common law it was held that every man must have some knowledge "of the quality of his beast" *(1 Hale P. C. 430)*. See *Pope v. Reading Co.,* 304 Pa. 326, 333, 156 A. 106. For example, it is established law that if a man turns a horse loose on a public street and that horse injures someone, the man who turned the animal loose is liable for the resulting damage. This court said in *Goodman v. Gay,* 15 Pa. 188, at 193: "All men know that a horse which has been stabled and well-fed will, when turned out, run and plunge, and become dangerous in the midst of people." In the case at bar, defendant arranged for horse racing on a track which was muddy in one spot. A race track that is muddy in one spot is far more dangerous than a race track that is muddy all around its course. When the horse that caused the damage reached this muddy spot, it slipped and fell, threw its rider, and then ran away. The secretary of the defendant association testified under cross-examination that "he was in charge of the races on the afternoon of the accident, that at the time the horse was running riderless and uncontrolled

around the race track he was in the judges' stand and saw the horse circling the track, and that nothing was done to catch or control the runaway horse." The fact that defendant association had taken no precautions to safeguard the people it had invited to be present from any harm that might result in the event there was a runaway, was, in my judgment, a neglect of duty. Furthermore, that nothing was done to catch the runaway horse was, in my judgment, a neglect of duty. The Superior Court in its opinion cites these facts: (1) "One of the horses fell and threw its rider. This horse was subsequently caught near the grandstand." (2) "At the turn just beyond the halfway post of the track, another horse fell and threw its rider. This horse got up and started around the track following the other horses in the race. It did not stop at the grandstand, but continued around the track two additional times with the hood which it wore in the race partially down over its eyes and nearly obscuring its vision. On the third time around at the turn at the right of the grandstand, it swerved to the outer rail of the track and jumped over it and among a number of spectators who were standing . . . near the fence on the outside of the race track rail. [Among these was the severely-injured plaintiff.] . . . (3) According to one witness, 'No effort whatever was made to catch the runaway horse, or to keep it on the inside of the track where it could not inflict injury on any of the patrons on the fair grounds; that he saw no mounted marshal on the track at any point where you could see him from the grandstand.' . . . (4) There were a number of witnesses on behalf of the plaintiffs who testified that where the horse fell there was a muddy, slippery place on the track. One of plaintiffs' witnesses, Tilman H. Paul, a licensed starter, testified that this condition would make the track unfit for running races." . . . (5) There was also testimony to the effect that "the fence between the race track and the roadway was

not of sufficient height to prevent race horses from leap-
ing into the roadway or passageway."

In view of these facts, succinctly and correctly stated
by the Superior Court and fully justified by the evidence,
I cannot concur in the conclusion of the majority that
there was such a total failure of proof of defendant's
negligence that the trial judge should have given the
jury binding instructions in defendant's favor. If one
visualizes the situation just before Mrs. James was in-
jured and imagines himself witnessing this riderless
horse galloping around the track two or three times with
no one, in behalf of the defendant association, making
the slightest attempt to prevent it from doing damage to
people who were lawfully present, he would, I think, be
likely to come to the conclusion that defendant associa-
tion was guilty of utter disregard of its duty toward the
people it caused to assemble to witness its races. For
the association not to have had persons present to guard
against such a contingency as actually happened was as
neglectful of due care as it would be for a city not to
police a large gathering of human beings or in not hav-
ing firemen present in an auditorium subject to fire haz-
ards and which was filled with human beings. Fires do
not ordinarily break out in such places but *they may do
so* and prudent management always takes precautions
against them. Failure to take such precautions is negli-
gence. The catching of runaway horses by policemen
and others adept in catching such horses, on city streets,
when horses were more numerous than they are now,
was a common occurrence. Defendant association should
have reasonably anticipated that such an occurrence
as took place on this track on the day in question
*might happen,* and it should have taken the necessary
precautions to properly safeguard the persons assembled
there, from the dangers of a runaway horse. The woman
who was a victim of this runaway horse would not have
been injured if the officers of defendant association had

taken the most elementary precautions dictated by a normal, humane regard for the safety of others.

I would affirm the judgment of the court of common pleas and of the Superior Court.

Mr. Justice BARNES joins in this dissent.