## Blake *v.* Fried, Appellant.

Argued October 9, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*George P. Williams, III,* with him *Orr, Williams & Baxter,* for appellants.

*Samuel B. Brenner,* for appellees.

OPINION BY ROSS, J., March 17, 1953:

This is an action of trespass to recover damages for personal injuries sustained by the plaintiffs while they were spectators at stock car races conducted at defendants' stadium. After a jury verdict for each plaintiff, the defendants moved for judgment n.o.v., and after their motion was overruled and judgments entered on the verdicts, they appealed to this Court.

There is no dispute as to the facts. On the evening of September 4, 1950, plaintiffs paid admission to and occupied seats in defendants' stadium for the purpose of watching stock car races. Stock cars are ordinary passenger automobiles with fenders removed and motors altered for greater speed. Defendants' installation, known as Yellow Jacket Stadium, consisted of a one-fifth mile macadam track, oval in shape and banked at the outside circumference with an uncovered grandstand on one side of the racing area. A heavy timber guard rail, or "crash rail", approximately three feet high, encircled the outer edge of the track. About one foot behind the guard rail and extending completely around the track were a number of iron poles about 25 feet high, upon which were located the flood lights which illuminated the infield and track. Strung between these iron poles and extending from the ground to a height of 14 feet was a mesh fence constructed of

wire one-fourth inch in diameter. The protective fence completely enclosed the racing oval and was reenforced by three heavy cables strung behind and against it. Defendants' grandstand lay parallel to one side of the track and was set back therefrom a distance of six to ten feet.

On the night in question, plaintiffs occupied seats in the fourth or fifth row of the grandstand. At approximately 10:30 p.m., during the fourth or fifth race, a wheel came off one of the stock cars as it sped past the grandstand. This wheel rolled to the guard rail, hit it, bounded some 24 feet into the air, cleared the protective fence and fell into the grandstand, injuring plaintiffs.

The theory of negligence relied upon by plaintiffs in their complaint and at the trial was that defendants failed to erect proper safeguards on their grandstand. The only question of negligence submitted to the jury by the court below was whether defendants had provided a reasonably safe place for spectators at their stadium. The issue before this Court is whether there was any evidence adduced at the trial to support that theory of negligence.

Plaintiffs concede, properly, that the mere happening of an accident is no evidence of negligence (*Thompson v. Gorman*, 366 Pa. 242, 246, 77 A. 2d 413), but advance the theory that a special and expanded responsibility is cast upon the operators of places of public amusement for profit as regards the bodily safety of their patrons. In support of what they denote as "this exceptional doctrine" they cite *Durning v. Hyman*, 286 Pa. 376, 133 A. 568, and *Skeen v. Stanley Co. of America*, 362 Pa. 174, 66 A. 2d 774, and conclude from the fact of recovery by plaintiff in each of these cases that as a general proposition of law the proprietor of a public place of amusement warrants the physical

safety of his paid patrons. In both cases patrons of moving picture houses were injured, the *Durning* plaintiff by collapse of a seat and the *Skeen* plaintiff by the fall of a bolt, evidently from defendant's ceiling. Both decisions rested on application of the doctrine of exclusive control, which is an exception to the general rule of proof of negligence, viz. : "When the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants that the accident arose from a want of care." Although plaintiffs in the present case do not specifically refer to the doctrine of exclusive control, they invoke it by citation of their cases. In *Miller v. Hickey*, 368 Pa. 317, 81 A. 2d 910, the Supreme Court, speaking through Mr. Justice BELL, in restricting application of the doctrine to a limited field of cases, stated at page 332: "Even in the leading case of Durning v. Hyman, 286 Pa. 376, 133 A. 568, where a child sued a moving picture theater for injuries caused by the breaking of a seat, the Court in removing a nonsuit said: 'The defendant, in such instances is called upon to show, not necessarily the cause of the accident, but *that he exercised due care to prevent harm*: Spees v. Boggs, 198 A. 112. *If such facts appear* in the testimony of the plaintiff, a nonsuit should be entered (Stearns v. Ontario Spinning Co., 184 Pa. 519), or, if established in defense, *binding instructions are properly given,* but in one way or the other, a satisfactory explanation is required. . . . She had the right to rely on the assumption that the defendant had used reasonable care for her safety. Her proof made necessary some explanation by defendant showing due caution had been exercised to prevent the happening of the ac-

cident which occurred.'" In the present case there was no allegation or proof that the precautions were sub-standard or defective and consequently a proper case for the application of the doctrine of exclusive control has not been made out, and the general rule as to proof of negligence obtains.

Negligence implies the absence or want of care which a reasonable man would exercise under the circumstances. *Maternia v. Pennsylvania R. R. Co.,* 358 Pa. 149, 56 A. 2d 233. There must appear negligence for which these defendants are responsible. *Vetter v. Great A. & P. Tea Co.,* 322 Pa. 449, 453, 185 A. 613. It need not be proved by direct evidence but may be inferred from attendant circumstances if the facts and circumstances are sufficient to reasonably and legitimately impute negligence. *Rockey v. Ernest,* 367 Pa. 538, 80 A. 2d 783; *Wright v. Straessley,* 321 Pa. 1, 182 A. 682. When negligence is inferred from the circumstances rather than established by direct proof, those circumstances must point to but one conclusion—that defendant was negligent. *De Francisco v. LaFace,* 128 Pa. Superior Ct. 538, 194 A. 511. Since there was no direct evidence of negligence, we examine the attendant circumstances with a view to determining whether they logically support an imputation of negligence.

The unbending test of negligence with respect to methods, machinery and appliances is the ordinary usage of business. *Iron-Ship Building Works v. Nuttall,* 119 Pa. 149; *Titus v. Bradford, B. & K. R. Co.,* 136 Pa. 618; *Kilbride v. Carbon Dioxide & Magnesia Co.,* 201 Pa. 552, 51 A. 347; *Farne v. Pennsylvania Lighting Co.,* 275 Pa. 444, 119 A. 537. In these cases the defendant presented evidence tending to show that the appliance or method plaintiff contended would have prevented the accident was not one in general use in its business. In each case it was, for that reason, held

error to submit the question of defendant's negligence to the jury. In later cases the courts of this Commonwealth have adhered to general use as a test of negligence with respect to methods and appliances employed in business and have held that in the absence of proof by *plaintiff* that defendant deviated from ordinary standards, the question of negligence is not for the jury. The following cases illustrate the governing principle. In *Mills v. Lit Brothers,* 347 Pa. 174, 32 A. 2d 10, an action of trespass was instituted to recover damages for injuries sustained by the 3½ year-old plaintiff in defendant's department store. The evidence disclosed only that the minor plaintiff left its mother and walked to a moving escalator. Plaintiff was discovered shortly thereafter with the fingers of his left hand caught in the narrow aperture where the tread of the escalator meets the comb plate of the exit platform and disappears into the floor. The trial judge directed the jury to return a verdict for the defendant. The Supreme Court affirmed the judgment and stated at pages 175-176: "The defendant was under a duty to use reasonable care in keeping its escalators in a safe condition, but there is not a scintilla of evidence that this duty was violated. The instrumentality causing this accident was a recent installation of modern design. There was no testimony of any defect in its structure or operation. . . . the evidence does not show that either the mechanism or its appliances were constructed in an unusual or extraordinary manner or that precautions and safeguards used in the operation of similar instrumentalities had not been provided by the defendant." In *Beck v. Stanley Co. of America,* 355 Pa. 608, 50 A. 2d 306, plaintiff fell in defendant's theater and sought recovery on the theory that defendant was negligent in failing to provide proper lighting. Judgment n.o.v. for defendant was affirmed. The Supreme

Court adopted the opinion of the trial judge wherein it was said at page 614: "Assuming, however, that insufficient lighting, standing alone, without proof of the existence of any accompanying danger which proper lighting would have revealed might raise an issue for the jury, has the plaintiff furnished such proof? There is no evidence that the theater was not lighted as such places usually are, in the exercise of reasonable care, under the circumstances. There is no proof that the defendant deviated from the ordinary standards in furnishing light." To the same effect see *Yearsley v. American Stores Co.*, 97 Pa. Superior Ct. 275.

The factual situation here presented is one of first impression with us. The nearest approximation to it is that of *James v. Columbia Co. A., H. & M. Assn.*, 321 Pa. 465, 184 A. 447. There, during the course of a race a horse fell, threw its rider, ran riderless around the course, jumped the fence surrounding the track and struck and injured the wife plaintiff, who was walking along one of the roadways within defendant's fair grounds. Measurements of the height of fences at other tracks was introduced into evidence. Recovery was denied, the Supreme Court holding that it had not been shown that a fence of 36 inches was insufficient or that the maintenance of such fence was a breach of duty of ordinary care, that there was no evidence that a fence of the average height maintained at other race tracks, as to which plaintiffs' witnesses testified, would have kept the horse within bounds and thereby prevented the accident, and that there was a failure of proof that the injuries suffered were the proximate consequence of the negligence alleged.

In this case plaintiffs adduced no evidence whatever as to the height of protective fences at other race tracks which the jury could use as a basis of comparison to determine whether or not defendants were negli-

gent in not having erected a higher one. While customary methods do not furnish a conclusive or controlling test of negligence or justify a practice obviously laden with danger, they are nevertheless to be considered as factors of measurement of due care. *Price v. New Castle Refractories Co.*, 332 Pa. 507, 3 A. 2d 418; *Moran v. Pittsburgh-Des Moines Steel Co.*, 86 Fed. Sup. 255, 267. A jury is not permitted to speculate or guess; conjecture, guess or suspicion does not amount to proof. *Sharble v. Kuehnle-Wilson, Inc.*, 359 Pa. 494, 59 A. 2d 58. Without a standard of comparison to use as a basis in their determination of the existence of negligence, the jury's verdict must be considered as representing mere conjecture, and their conception of a reasonable standard, formulated retrospectively, cannot be a legal basis for a finding of negligence. *Hammer v. Philadelphia*, 104 Pa. Superior Ct. 119, 122-123, 158 A. 659.

The *James* case also presented stronger evidence of negligence than the present one in that the horse might conceivably have been stopped between the time it broke away from its rider and the time it inflicted injury on plaintiff had defendant's system of marshaling the track been more effective. The intervening time element is not present here. Only a few seconds elapsed between the detachment of the wheel and the impact with plaintiffs' bodies.

The entire issue of negligence in a case of this type hinges on foreseeability. "Negligence . . . is conduct which falls below the standard established by law for the protection of others against unreasonable risk. It necessarily involves a foreseeable risk, a threatened danger of injury, and conduct unreasonable in proportion to the danger. If the defendant could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what

he could anticipate, there is no negligence, and no liability." *Prosser on Torts*, sec. 48, page 341.

It is foreseeable that if no crash fence were erected drivers of racing cars, losing control of them, might leave the track, and if no further protection were afforded to break the force of their speed in the event they plunged over or through the crash fence, they might run rampant through the areaway, killing or injuring anyone who chanced to be in the path of their uncontrolled vehicle. That was the purpose of the wire fence; that was the hazard against which its erection was designed to guard. It was protection from the foreseeable.

To prevail, plaintiffs must show that *as to them* a duty was breached (*Harris v. Lewistown Trust Co.*, 326 Pa. 145, 191 A. 34), and to charge defendants with such breach of duty to their business visitors we should have to hold that a wheel becoming dislodged from a racing car in its rapid course around the track would foreseeably clear a fence 14 feet in height, hurtle through the air and injure spectators in the fourth or fifth row of the stadium. We should have to hold that the location of plaintiffs at the time of the injury was within the orbit of duty as defined by Mr. Chief Justice CARDOZO in *Palsgraf v. Long Island R. R. Co.*, 248 N. Y. 339, 162 N.E. 99, viz.: ". . . the orbit of the danger as disclosed to the eye of reasonable vigilance [is] the orbit of the duty. . . . The risk reasonably to be perceived defines the duty to be obeyed. . . ." Want of ordinary care consists in failure to anticipate what is reasonably probable, not what is remotely possible. *Camp v. Allegheny County*, 263 Pa. 276, 282, 106 A. 314. See also *Jefferson, Admrx., v. Y. M. C. A.*, 354 Pa. 563, 570, 47 A. 2d 653.

A quotation from *Kilbride v. Carbon Dioxide and Magnesia Co.*, supra, 201 Pa. 552, 557, 51 A. 347, is

peculiarly pertinent: "In Northern Central Railway Company v. Husson, supra, it was said: 'Almost all accidents could be avoided if the especial manner of their occurrence could be foreseen:' and we may add that, after almost every one, theories are advanced as to how it could have been avoided; but a defendant's liability for negligence is not to be so determined. What would have been wise, simply in view of what is learned after an occurrence like this, is no criterion of care. Failure to do some particular thing which might have prevented an accident, and which is brought to the attention of the party charged with carelessness for the first time only after the accident has happened, is not the test of negligence; the standard of proper care is the observance of prudence as the average man observes it, by following the ordinary usage of his business: Titus v. Railroad Company, supra. If, having exercised such prudence, unforeseen accidents occur, negligence cannot be imputed to him."

Plaintiffs urge upon us further that defendants by the commercial operation of stock cars for racing engaged in an ultrahazardous activity within the meaning of Sections 519 and 520 of the Restatement, Torts. Section 520 defines as "ultrahazardous" an activity which "(a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care; and (b) is not a matter of common usage." *Federoff v. Harrison Construction Co.,* 362 Pa. 181, 66 A. 2d 817, cited in support, involved damage to plaintiffs' real property by concussion as a result of defendant's blasting operations nearby. Blasting is properly within the category of ultrahazardous activities but the analogy to the present situation is imperfect. Blasting involves such high degree of danger that the law, while not enjoining the activity because of its social

utility, will nevertheless hold the blaster liable without a showing of negligence. It cannot with reason be said that a person who watches a stock car race from his seat in the stadium is exposed to danger of the same almost certain degree as he would be if he were in similar proximity to an explosion of dynamite. In the final analysis, whether or not the courts should impose absolute liability in connection with the maintenance of a particular type of activity is a problem in social engineering.

We are of the opinion that as a matter of law defendants were not guilty of negligence and that judgment n.o.v. should be entered for them.

Judgments reversed and here entered for defendants.