## United Dyeing and Finishing Co.
## v. Ben Construction Co.

*Morris Efron*, for plaintiff.

*Paul A. McGinley*, for defendant.

HENNINGER, P. J., November 12, 1957.—Plaintiff, engaged in the business of dyeing in the Borough of Catasauqua, Lehigh County, had its water supply interrupted when the borough turned off the water

mains in plaintiff's neighborhood in order to repair damage done to the mains by defendant's employes who were digging a trench for sewage pipes.

Plaintiff sued defendant for the damage to the goods in the vats, the cost of the dyes, the wages of men idled by the water stoppage and loss of profits.

Defendant filed preliminary objections by way of demurrer and for a more specific complaint. We find no merit in the motion for a more specific complaint for we covered those points in our opinion heretofore filed in the same case.

The amended complaint now clearly states that a water main in the immediate vicinity of plaintiff's plant and which supplied water thereto was broken by reason of negligent and careless excavation by defendant's employes, and that as a result of said breaking, the borough was obliged to turn off plaintiff's water supply for the purpose of making repairs to the main.

Since this case comes to us on demurrer, we assume the truth of averments that, we suspect, plaintiff might have had difficulty in proving.

One is the averment that defendant negligently struck the water main causing the leak. It is the rare excavation in the vicinity of other utilities in which some time or other, the other utility is not interfered with. An inference of negligence does not arise from the mere showing of damage to the borough's water mains, when a contractor has been directed to excavate in their vicinity. We are assuming, however, that plaintiff can show an act of negligence on defendant's part.

Again it does not follow from the penetration of a water main that a municipality is *obliged* to cut off the water supply to make the necessary repair. Since plaintiff has so pleaded, however, we accept that as a

fact in this case for the purpose of ruling upon the demurrer.

There are two other matters that are not pleaded and, therefore, we infer cannot be pleaded. We assume that the break in the main caused by defendant's alleged negligence did not cause sufficient diminution of the supply of water to interfere with the operation of plaintiff's plant. We note also that there is no allegation that the borough could not have adapted its repair schedule to plaintiff's needs or have given plaintiff due warning to avoid the damage caused. The first omission is deliberate, because we called attention to it in our former opinion. The second may be inadvertent, and we place no reliance upon it.

We further note that plaintiff's damages did not occur from any force released by defendant, that is to say, its damage did not result from the flow of water from the pipe broken through defendant's negligence.

We are of the opinion, therefore, that plaintiff's action must fail because (1) plaintiff has failed to show that defendant owed any duty toward the users of water in the borough, (2) the law has never redressed such injury, and (3) plaintiff's damage, if any, was caused by the independent, intervening and deliberate action of the borough and not by defendant's negligent action.

Defendant's negligence damaged property of the borough. For this it is answerable to the borough. Whether plaintiff, a taxpayer, could bring an action on behalf of the borough we need not decide, since the action is for the damage to plaintiff and not for the damage to the borough.

The only damage to plaintiff was to its expectation of a continuous supply of water. As we have seen, the break in the main did not interrupt that supply, at least not to the extent of any damage to plaintiff.

Defendant was under no obligation to supply water to plaintiff. Of course, if it had willfully and maliciously cut off plaintiff's water supply, different rules would apply, but no such charge is made here.

It was the borough who cut off plaintiff's water supply and it was the borough and not defendant that was responsible for the maintenance of such a supply. We are not deciding that plaintiff would have any action against the borough for so doing, for we are of the opinion that no such action would lie. If, however, there is any such action, it would have to be against the borough.

If the borough were challenged on the basis of its cutting off of plaintiff's supply of water, we have no doubt it would have an action over against defendant, whose negligence made the borough's action necessary. We are convinced, however, that no action lies directly against defendant, whose negligence may have necessitated the shutting off of the water main but did not actually diminish plaintiff's supply of water.

Plaintiff has shown us no cases and we know of none in which a person, whose negligence has caused the interruption of a public utility's service, has been held liable for damage incidental to such interruption of service, as distinguished from the immediate consequences of such injury, such as a flooding of a property or destruction by a falling pole or wire or asphyxiation or explosion by escaping gas.

These cases are influenced by the famous phrases of Justice Cardozo in Palsgraf v. Long Island R. R. Co., 248 N. Y. 339, 162 N. E. 99.

" 'In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have averted or avoided the injury' . . . (p. 343) the orbit of the danger as

disclosed to the eye of reasonable vigilance would be the orbit of the duty." See Blake v. Fried, 173 Pa. Superior Ct. 27, 36.

Eldredge, in Modern Tort Problem, page 16, states that this view is adopted in A. L. I. Restatement of the Law of Torts, in section 281, comment c, reading as follows:

"c. Risk to class of which plaintiff is member. If the actor's conduct creates a recognizable risk of harm only to a particular class of persons, the fact that it causes harm to a person of a different class, to whom the actor could not reasonably have anticipated injury, does not render the actor liable to the persons so injured."

Looking back, we can well see that a break in a water main did actually, according to plaintiff's complaint, necessitate a stopping of water supply and that a stoppage in the water supply, besides causing inconvenience to householders, caused a loss to plaintiff, because of the delicate nature of the work in which they were then engaging. But the question is whether defendant, performing its duty at the spot designated in its contract with the borough, could anticipate that a slip in its power tools or the failure of its employe to see the pipe line before it was struck, would cause a loss to plaintiff.

The cases have held that want of ordinary care consists in failure to anticipate what is reasonably probable, not what is remotely possible: Camp v. Allegheny County, 263 Pa. 276, 282; Harris v. Lewistown Trust Co., 326 Pa. 145, 152; Brusis v. Henkels, 376 Pa. 226, 230.

Perhaps the action of the borough in turning off the water was not an intervening, superseding cause, because one might anticipate that a break might necessitate stoppage of water supply for the purpose of

making repairs. See A. L. I. Restatement §§441 to 453, inclusive.

Surely the borough did not anticipate the dire results of such action. If the borough could not foresee such results, the contractor performing the borough's work cannot be held to have foreseen them and be held for the consequences of the borough's act.

We would permit plaintiff to plead over, excepting that it appears that it has already stated its best case, presenting a pure question of law on the extent of the liability of a tortfeasor to third parties. See Roadman v. Bellone, 379 Pa. 483, 493.

Now, November 12, 1957, defendant's demurrer is sustained and judgment is entered in favor of defendant and against plaintiff.