McCracken *v.* Curwensville Borough, Appellant.

Argued April 12, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. C. Arnold*, of *Arnold & Smith*, for appellant.—There was no duty on the borough to remove snow and ice from Susquehanna Avenue.

The duty was on the department of highways to remove the obstruction: Brendlinger v. Twp., 148 Pa. 93.

There was no sufficient proof of negligence as to the ice on the street.

There was no sufficient evidence to sustain a finding of negligence of the borough as to the maintenance of the guard rails: Yocum v. Bloomsburg, 289 Pa. 512; Wasser v. County, 249 Pa. 25; Freedom Oil Works Co. v. County, 298 Pa. 174; Sumey v. County, 298 Pa. 93.

Decedent was guilty of contributory negligence as a matter of law: Knox v. Simmerman, 301 Pa. 1; Winner v. Twp., 158 Pa. 405; Kunkle v. County, 219 Pa. 52; Smith v. New Castle, 178 Pa. 298; Haskins v. R. R., 293 Pa. 537.

*A. M. Liveright*, of *Liveright & Smith*, with him *Kramer & Kramer*, for appellee.—The facts of the instant case bring it within the ruling of the court in Bailey v. Oil City, 305 Pa. 325.

The whole question of contributory negligence is disposed of in Steck v. Allegheny, 213 Pa. 573; Brown v. White, 206 Pa. 106.

Negligence may be the proximate cause of an injury of which it is not the sole or immediate cause: Boggs v. Tea Co., 266 Pa. 428; Community Fire Co. v. Pa. P. & L. Co., 92 Pa. Superior Ct. 304, 307; Wassel v. Ludwig, 92 Pa. Superior Ct. 341, 343; Taylor v. Di Sandro, 102 Pa. Superior Ct. 258, 264.

OPINION BY MR. JUSTICE MAXEY, September 26, 1932:

The plaintiff, Lulu McCracken, brought an action in trespass against the defendant for causing the death of her husband through negligence. The fatal accident occurred in the Borough of Curwensville. In this borough Susquehanna Avenue crosses Anderson Creek by means of an iron bridge. The cartway of the bridge is of less width than the avenue leading into it, and the avenue narrows by several feet as it approaches the bridge entry. At the point of entry there is a sharp curve to the right, and a little further back there is a twenty degree curve to the left. By reason of the latter curve, the drivers of vehicles approaching the bridge have a somewhat limited view ahead. South and west of the avenue near the bridge entry and for about 100 feet prior thereto is a nearly perpendicular cliff 20 feet in height. The base of this cliff is 18 inches from the curb of the highway. Water customarily drips from this cliff at all seasons of the year, and at times of wet weather and melting snow it flows in a steady stream from this cliff to the highway. Occasionally bits of shale, clay and loose mud fall from the cliff upon or in close proximity to the highway. On the day of the fatality, there was an accumulation of shale, clay and mud extending out to the highway, and the curb was covered to a depth of two to six inches with mud for a distance of 75 to 100 feet. This accumulation was covered with ice three or four inches in thickness and this ice had been there for about 20 to 30 days. The mud caused the water to flow out upon the highway. At 4:30 p. m., December 26, 1928, plaintiff's husband was driving a sedan along Susquehanna Avenue, past the

cliff toward the bridge. The ice made the highway slippery and dangerous. While McCracken's car was moving on the highway at this point, it skidded upon the hillocks and ridges of ice, became unmanageable, crashed against the guard rail of the bridge, and fell into the creek below, fatally injuring McCracken.

Plaintiff complains of the condition of the highway and the condition of the wooden guard rail. The latter had not been repaired for many years and it had become cracked and rotten. It consisted of two planks with one bolt in each end. There was no brace in the middle. It was in such condition that slight pressure was sufficient to loosen the planks and to permit any impacting object to break through it and fall off the bridge into the creek below. The jury found a verdict for the plaintiff in the sum of $12,683.50. There were motions for a new trial and for judgment non obstante veredicto. They were overruled. Judgment was entered upon the verdict and this appeal followed.

The first question that arises is whether or not the borough was responsible for the condition of this highway. The maintenance of the highway where this accident occurred was taken over by the department of highways under the Act of May 12, 1925, P. L. 593, section 10, at a time considerably prior to the accident. This section provides that where any highway within a borough shall form a part or section of any state highway and this section is not already improved according to the standards of the state highway department, the secretary of highways may improve or reconstruct such unimproved section at the expense of the Commonwealth; and ten per cent of the cost of said maintenance shall be paid by the borough in which the work is done.

It is obvious that the assumption by state officials of the duty of improving or reconstructing the highway, according to the standards of the state highway department, in no way relieves boroughs of the fundamental duty to keep its highways safe and free from obstruc-

tions. We agree with the court below that "a street within a borough is none the less a borough street because the state highway department may have constructed it at the expense of the State."

The Act of May 31, 1911, P. L. 468, the Sproul Act, which gave rise to our present system of state highways, provides in the first clause of section 10 as follows: "Anything herein contained, or any apportionment of the State into highway districts, shall not be construed as including or in any manner interfering with the roads, streets, and highways in any of the cities, boroughs or incorporated towns of the Commonwealth." This is repeated in later road acts, including the Act of May 12, 1925, P. L. 593.

Section 20 of the Sproul Act, 1911, P. L. 521, which provides that "for the purpose of uniform, efficient, and economic maintenance and repair of the state highways, the state highway commissioner [now secretary of highways]......shall keep the state highway free from holes, ruts, sticks, loose stones, or other impediments of any kind, which tend to interfere with free and easy travel, or which if permitted to exist might tend to the deterioration, injury or destruction of the highway," refers to state highways *outside* of the cities, boroughs and incorporated towns. The duty of keeping the streets within Curwensville Borough reasonably free from long standing accumulations of dangerous ice rested at the time of the fatal accident in question upon the borough and not upon the State.

The second question is whether or not the borough was negligent in permitting this accumulation of ice on this frequently traveled highway. "The liability of a municipality for injuries to travelers caused by accumulations of ice and snow on its streets and sidewalks depends upon whether or not it has been negligent. It is merely bound to exercise reasonable care and diligence to keep its streets and walks reasonably safe for travelers who are using due care, and its liability should be made to

depend upon what is reasonable under all circumstances, paying attention to climatic conditions": 13 R. C. L. 408, section 335; Boro. of Mauch Chunk v. Kline, 100 Pa. 119; Holbert v. Phila., 221 Pa. 266, 70 A. 746.

In Decker v. Scranton, 151 Pa. 241, 25 A. 36, this court held that a municipality is liable in damages for an injury caused to a person by slipping on ice in a street, where the ice has accumulated by reason of the neglect to construct and maintain suitable drains to carry off water. This court said: "It was certainly its [the city's] duty to construct and maintain suitable ditches and sluices to carry off the water which ordinarily flowed from springs and other sources outside and in the vicinity of the highway. It could not in violation of this duty allow such water to run along the center of or over the road, until there was an accumulation of ice from it which rendered unsafe and obstructed travel thereon, without incurring liability to a party who in consequence thereof sustained an injury." The court said further: "That the road was in a dangerous condition at the time and place of the accident does not admit of serious question...... It was a condition which was attributable to the defective construction of the road, in conjunction with the ice which was negligently allowed by the city to form and remain there. The case was for the jury." See also Manross v. Oil City, 178 Pa. 276, 35 A. 959. Holbert v. Phila., 221 Pa. 266, 271, 70 A. 746, held likewise as to ice on a street or sidewalk.

In McLaughlin v. City of Corry, 77 Pa. 109, this court said: "If the city authorities were negligent in allowing a dangerous obstruction to exist in the public highway, which they could have removed, and the plaintiff was injured thereby, without any fault of his own, the city was undoubtedly liable for the damages which he suffered. It is argued, however, that as the obstruction complained of was the result of natural causes, over which man has no control, therefore the defendant is not liable. This would be true if the effects produced by these causes were

beyond human remedy; but ordinarily such is not the case. Roads are constantly being worn by the never ceasing action of the elements; but no one imagines that this is an excuse for a neglect to repair them. A sudden flood may render a public bridge or highway impassable, but surely that is no reason for allowing it to remain so forever. A municipality cannot prevent the general slipperiness of its streets, caused by the snow and ice during the winter, but it can prevent such accumulations thereof, in the shape of ridges and hills, as render their passage dangerous. It is no more difficult to remove or level such obstructions than it is those occasioned by the water and earth during the summer. The cases of Collins v. Council Bluffs, 32 Iowa 324; City of Providence v. Clapp, 17 How. 161; Luther v. Worcester, 97 Mass. 269, all hold that municipal corporations are liable for damages occasioned by accumulations of snow and ice." See Harrington v. City of Buffalo, 121 N. Y. 147; Taylor v. Yonkers, 105 N. Y. 202.

In 29 Corpus Juris 687, is expressed this principle: "The municipality will be liable where a way is defective from the presence upon it of snow and ice in large quantities, negligently permitted to remain by the municipal authorities after a lapse of sufficient time to clear the way, and for injuries caused by ice which would not have formed but for a structural defect in the highway preventing water thereon from flowing off." Corpus Juris cites Wright v. Lehman Twp., 19 Pa. Superior Ct. 653. In that case it appears from the opinion of the court that "A snowdrift extended diagonally across a public road, sloping downward and narrowing toward the northern side. Though it was observed almost immediately by the supervisor charged with the care of the road, nothing was done toward removing it, and travelers avoided it, in good part, by driving around the lower end, close by the roadside fence. Successive thawing and freezing for twelve days, while reducing its dimensions, left it with a hard, icy surface. On the

night following this period, a sleigh in which the plaintiffs and others were riding, was driven over the road. In the attempt to pass around the drift, it struck the slope, and sliding down towards the roadside, upset. Mrs. Wright, one of the plaintiffs, was thrown out and thereby sustained the personal injuries complained of. The drift was unquestionably an impediment to travel, and it was the duty of the township supervisors to abate it sufficiently, at least, to make travel at that point easy and convenient, as required by the Act of 1836."

In the case before us the plaintiff called five witnesses to testify how long the ice had been in the highway where McCracken's car skidded. They testified that the ice had been there for from three weeks to one month. They described the ice as extending from curb to curb, and as containing ruts varying in width from two to six inches the entire length of the icy area. These icy ruts extended up to the bridge and onto it for a short distance. Witnesses also testified that there was no chance for the water that ran off the cliff to make its escape except by going onto the street. As one witness said: "There was no chance for the water to get away there; the dirt was level with the curb at the top; it left the water come off the cliff onto the street." This testimony indicated neglect on the part of the municipality to keep the roadside ditches open for adequate drainage, and if the jury found that to be the fact, the principle laid down in the case of Decker v. Scranton (supra), is applicable.

In Winegardner v. Springfield Twp., 258 Pa. 496, 102 A. 134, this court held: "It is the duty of a township to exercise reasonable care to keep its highways in a safe condition for ordinary travel. It must anticipate and provide against danger to persons using its roads for travel conducted in the ordinary manner. It must remove obstructions and defects which would naturally or probably cause injury to those persons who might have occasion to travel upon its highways...... The condition of the road at this point [where the accident oc-

curred] was, or should have been, well known to the township authorities, and the duty was imposed upon them to see that it was reasonably safe for ordinary travel."

In Carl v. City of New Haven, 93 Conn. 622, 107 A. 502, the Supreme Court of Errors of Connecticut aptly said: "It has long been recognized in this state, as elsewhere, that some duty rested upon cities and towns in respect to snow and ice upon highways...... Our municipalities, as regards conditions produced by fallen snow or formed ice upon streets and walks, are under no obligation to make them absolutely safe, and much less to make them safe under all circumstances. What the law requires of them, and all that it requires, is the exercise of such efforts and the employment of such measures, directed to the end that their streets and walks be maintained in a reasonably safe condition, all the circumstances of the situation considered, as, in view of the circumstances and conditions, are in themselves reasonable. The circumstances to be taken into account and the considerations to be weighed in determining what is reasonable to be done, and what a reasonable condition to be sought after and attained, if reasonably attainable, are many. Their variety is vastly greater, and their relation to the decision far more interrelated and complex than in the case of structural defects. They involve as prominent elements in the decision the location, extent, and character of the use made of the street or walk, the practicability and efficiency of possible remedial measures, the size of the problem which the municipality is called upon to face in the existing emergency, the expenditure involved in dealing with that problem in the several possible ways, the physical resources that the municipality has at command, which it can utilize to deal with it, and so forth and so forth."

Under the law of Pennsylvania the duty rested upon the borough to exercise reasonable care and diligence in keeping this highway free from obstructions and reason-

ably safe for travel, and the question whether or not it did so was in this case for the jury.

The proximate cause of the fatal injury to McCracken was the skidding of his car on the ice of the highway. A factor, but a negative one, in this accident was the defective guard rails of the bridge. It has been held in other jurisdictions that the insufficiency of bridge railings is not the proximate cause of an injury caused primarily by some defect in a traveler's equipment, as where a horse because of disease or choking by the harness plunges off the bridge carrying the traveler with him: 4 R. C. L. 233, section 35; McClain v. Garden Grove, 83 Ia. 235, supra, 48 N. W. 1031; 12 L. R. A. 482. The guard rails in question were of white pine wood, without any preservative such as creosote. They had been in place ten years without replacement or repair or painting and were weatherbeaten and cracked. However, whether the guard rails were sufficient to "guard" against ordinary contingencies or those which might be reasonably apprehended, and whether or not the municipality had constructive notice of their insufficiency is of minor importance in this case in view of the fact that the proximate cause of the injury was the icy condition of the street. Even if the guard rails of the bridge had been adequate to prevent the car from going into the water below, it is by no means certain that plaintiff's husband would not have been fatally injured by crashing into them, as persons often are fatally injured by crashing into immovable objects. Crashing into the guard rails and falling into the water below were both results of the first or proximate cause which was, as stated, the icy condition of the highway. However, the jury had a right to consider the condition of the guard rails as a factor, though a negative one, in this accident.

In Dalton v. Upper Tyrone Twp., 137 Pa. 18, 22, 20 A. 637, this court held that it was the duty of township authorities to see that the bridge and approach to it are kept in such condition as to be reasonably safe for pub-

lic travel, and if they failed to do this, and a person fell, without fault of his own, over the unguarded embankment, and was injured, the township was liable.

In Burrell Twp. v. Uncapher, 117 Pa. 353, 364, 11 A. 619, this court held that if an unguarded condition of the roadside was an act of negligence on the part of the defendant, it follows that the defendant is responsible. Whether it was negligence on the part of defendant to maintain the road in question without some kind of protection was a question of pure fact which was a problem for the jury alone to determine.

In the Twp. of Plymouth v. Graver, 125 Pa. 24, 17 A. 249, this court held that whenever a highway is from any cause rendered unsafe to travelers, it is the duty of the township to do whatever is practicable and reasonable, under all circumstances, to render it safe, and the facts in each case are to be submitted to the judgment and experience of the jury. See also Corbalis v. Twp. of Newberry, 132 Pa. 9, 19 A. 44.

In 9 C. J. 477, section 79, there is this principle: "Where guard rails to a bridge or its approaches are clearly necessary for the safety of travelers, a failure to erect or properly to maintain them is negligence for which the municipality or the company charged with the duty to maintain the bridge is liable to a party who in the observance of due care is injured by reason of such neglect. The rule is very generally held to apply, notwithstanding the fact that the shying, backing or unruly and unmanageable conduct of a traveler's horse may have contributed to the injury, the general rule being that the liability accrues if the injury would not have happened had there been a proper and sufficient guard."

In the case before us the unmanageable conduct of the automobile due to the ice on the road is analogous to the unmanageable conduct of a balky horse, and the principle cited from Corpus Juris applies.

In Yoders v. Amwell Twp., 172 Pa. 447, 33 A. 1017, this court held that the township authorities are bound

to forsee that a bridge may be crossed in the nighttime by a spirited horse, and that such a horse may take fright and if they neglected to place a guard rail upon a narrow bridge, and an injury resulted from the fright of such a horse in the nighttime, which could have been guarded against by a rail, the negligence of the township authorities is the proximate cause of the injury.

Borough authorities are bound to foresee that bridges will be crossed by cars and that in winter, in a situation such as is now before us, cars are likely to skid on icy curved approaches to a bridge, and therefore it becomes their duty to place adequate guard rails on such bridges as to prevent skidding cars from going off the side of the bridge into whatever is below. It is a matter of common knowledge that automobiles will skid on icy pavements and that cars traveling at even moderate speed become unmanageable when they start to skid on such pavements.

In Cage v. Twp. of Franklin, 8 Pa. Superior Ct. 89, that court held that township authorities are bound to know that the fright of a horse is an ordinary circumstance, and to be expected, and that his conduct when in fright may be unreasoning, insane, unlooked for, and that they cannot excuse their negligence in failing properly to guard a bridge by asserting that they could not foresee the particular freak of conduct in a terrified horse. In that case the court held that the question whether the negligence of the township in failing to maintain guard rails was the proximate cause of the injury was a question for the jury.

The condition of the bridge, defendant's negligence in respect thereto, and the contribution, if any, that the bridge's guard rails made to this accident, were questions for the jury under proper instructions, as was the question of the condition of the highway approaching the bridge.

The next question in this case is whether or not the decedent, McCracken, could be declared negligent as a

matter of law. One witness testified that just before the fatality she saw McCracken and observed his car 558 feet from the bridge. She estimated his speed at that time to be between ten and twelve miles an hour. She also said the grade from that point to the bridge was "gradual down hill." Another witness observed McCracken's car 400 feet from the bridge and estimated its speed to be between fifteen and twenty miles an hour. He stated that at the time he saw McCracken the latter was slowing down for the bridge and was putting on his brakes. A member of the state highway patrol testified that he saw McCracken when the latter's machine struck the ice near the bridge and when the car started sliding. He said the car slid back and across the road several times and then down into the bridge. It entered the bridge sliding.

In the case of Frye v. Washington Twp., 291 Pa. 240, 139 A. 871, this court held that the driver of a team and wagon was guilty of contributory negligence when, before driving on the roadway where he met with an accident due to the slippery condition of the road, his attention had been called to the dangerous condition of the road he proposed to use, because of the ice, and it was suggested that, if he intended to take the risk, he should secure log chains for his wagon, which could be gotten at the foreman's house a few rods distant, and when, before descending the grade where the road was slippery, he could plainly see the road in front, covered to its full width with a sheet of ice, for a distance of about forty feet, and not concealed by snow or dirt. He testified that he preferred not to unhitch his team but to take a "chance," and risk a passage. When his wagon entered on the ice it skidded and later overturned. The plaintiff was injured. This court held that it is undoubtedly the duty of the supervisors to keep the roads in their charge in reasonably good condition for travel, having in view their character, and the use to which there is reason for believing they will be subjected. The ques-

tion of the proper maintenance of the highway was submitted to the jury. This court held that judgment should have been entered for the defendant n. o. v. because of the plaintiff's contributory negligence.

In the case before us the facts are not so conclusive as to justify the court's declaring the plaintiff's husband negligent as a matter of law.

On a motion for judgment n. o. v. the plaintiff is entitled to have the testimony read in the light most advantageous to him and he must be given the benefit of every fact and inference of fact fairly deducible from the evidence. Under the testimony in this case the trial judge rightfully held that the question of McCracken's contributory negligence was a question of fact for the jury, to be submitted under proper instructions. The instructions were correct. The trial judge said: "If the injury complained of had been caused by the act or omission of the deceased, or his act or omission contributed in any way to his injury, then the plaintiff would not be entitled to recover damages, even though the Borough of Curwensville was negligent."

In the next paragraph the trial judge said: "The burden is upon the borough to show by the weight of the evidence that Clarence McCracken was guilty of contributory negligence." This latter instruction forms the subject of appellant's fourth assignment of error. This assignment cannot be sustained. This instruction was in accord with the rule of law this court laid down in Adams v. Gardiner, 306 Pa. 576, 585, 160 A. 589, as follows: "In an action of negligence, it is plaintiff's duty to make out a case free from contributory negligence. When this is done, the burden of proving such negligence is upon the defendant. 'The plaintiff is bound to present a case which discloses that he exercised due care or was free from negligence, or, as it has sometimes been expressed, he must not show that he failed to exercise due care, but he is under no obligation to prove the performance of any particular act by way of precaution

against injury. If he succeeds in establishing a prima facie case,—that is, one for which it does not appear that he was negligent,—the defendant has cast upon him the burden of introducing evidence in rebuttal thereof': 20 R. C. L., section 162, page 196."

The trial court in his charge said further on this subject: "The plaintiff would not be entitled to recover if you find that Clarence McCracken was negligent. He must have been free from blame himself before the consequences of this injury can be imposed upon the Borough of Curwensville." Later in the charge, the court reiterated: "If you find that he [McCracken] was guilty of contributory negligence, in that his act or omission contributed to his injury, then your verdict would necessarily have to be for the defendant because the plaintiff could not recover unless he be free from blame."

Judge McKenrick tried this case with painstaking care, and we find no error in his rulings on the admission or rejection of evidence or in his instructions. At the close of the case he was careful to ask counsel if there were anything that he omitted or that they might wish him to add. When the counsel suggested certain additions to the charge, the court responded by giving the instructions requested. He then asked counsel: "Is there anything further?" There was no response.

No inference of McCracken's negligence can be conclusively drawn from the fact that his car skidded on the icy pavement. Anyone familiar with the operation of an automobile knows that a car going at even a very moderate rate of speed over an icy surface on a level or down-grade highway will sometimes become unmanageable and skid as the car did in this case. Neither is there any merit in appellant's contention that "the decedent knowingly tested a manifest danger and that on the state of the record the burden was on the plaintiff to show that there was no other way that the decedent could go with safety." The paved highway traversed by the decedent was free from ice the entire distance from Lumber

114

City to Curwensville, save for a stretch adjoining the bridge and this stretch was shaded by the rock cliff and was around the curve. Neither did the defendant have any choice of routes on improved highways. One of defendant's own witnesses testified that the highway traversed was the only improved highway leading to decedent's destination. This court said in Steck v. City of Allegheny, 213 Pa. 573, 62 A. 1115: "When the testimony shows a defect of such character that the street can be used with safety by the exercise of reasonable care notwithstanding its defective condition, it is not for the court but for the jury to determine whether the injured party performed the duty required of him under the circumstances."

The trial judge was right in holding that the question of plaintiff's negligence was for the jury. The decedent cannot as a matter of law be adjudged negligent because he proceeded at a moderate rate of speed over an open, well-traveled public highway which four days previously when he passed over it had ice on it. According to testimony produced by plaintiff, the deceased was proceeding at a pace that the jury could well find was consistent with due care under the circumstances. This court in Brown v. White, 206 Pa. 106, 55 A. 848, said: "It is not necessarily negligence to attempt to pass over a noticeable accumulation of ice on a pavement. That may depend on the size and scope of the accumulation, the obviousness and magnitude of the danger, the means at hand of avoiding it, and other circumstances. In the present case the plaintiff had passed over the obstruction the evening before and whether it was prudent for her to do so again was for the jury."

"It is an established principle that if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of either party in the trial of a case, the question must be left to the jury. ...... A verdict should not be directed if on all the facts and circumstances there is room for fair and sen-

sible men to differ in their conclusions, or, as it is some-
times stated, [if] the evidence is not such that honest
minds could reach but one conclusion": 26 R. C. L.,
pages 1067, 1069, section 75. See also Heh v. Consoli-
dated Gas Co., 201 Pa. 443, 50 A. 994.

The case before us was one where on all the facts and
circumstances there was room for fair and sensible men
to differ in their conclusions as to whether the defendant
borough was negligent and as to whether plaintiff's hus-
band was negligent. The case was therefore for the jury.
Its submission was accompanied by proper instructions.

The judgment is affirmed.

Justice SCHAFFER dissented.