Fritzky et al., Appellants, *v.* Pittsburgh.

Argued October 30, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Coleman Harrison,* for appellants.

*John F. McDonough,* Assistant City Solicitor, with him *Wm. Alvah Stewart,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE DREW, November 25, 1940:

These appeals resulted from the refusal of the court below to take off judgments of compulsory nonsuit, which the learned court said were entered because there was no proof that the defendant municipality was negligent. The answer to that ruling is found in the testimony, a brief summary of which follows:

On the night of February 21, 1936, Caroline Fritzky, plaintiff, was riding with her son in his automobile on West Carson Street, a much used thoroughfare of the City of Pittsburgh, when an automobile, owned and driven by E. L. Moorehead, traveling in the opposite direction, collided with the car in which she was riding, and plaintiff sustained injuries which gave rise to these actions, brought by Mrs. Fritzky and her husband. West Carson Street is flanked on its south by a steep hillside or cliff, at the base of which is a stone wall varying in height from six feet to thirty feet. The lowest height of six feet is immediately opposite the place of the instant accident. The street is forty feet wide and there are two street car tracks upon it. Plaintiffs claim that the collision was caused by the "skidding" of the Moorehead automobile on a thick cake of ice which covered more than half the width of the street, and which the defendant municipality had negligently allowed to remain there for a long period of time. They assert that neither driver was negligent and that the proximate cause of the accident was the negligence of the municipality in allowing such a large piece of ice to obstruct the street.

The testimony of eyewitnesses of the accident and of other persons who daily passed that place, shows that a huge cake of ice had formed from water which had fallen from the hillside and over the wall and frozen on the sidewalk and street. They said "a solid cake of ice" extended from the wall, over the sidewalk and across half the width of the street; that its length was two hundred and fifty feet along the street, that it was sixteen inches deep adjoining the wall, twelve inches deep at the curb and from four to six inches deep near the center line of the street. It covered the sidewalk and the curbstone, the street between the curb and the car track, and the track itself. All traffic on that side of the street had to pass over it. It was testified that practically the same condition had existed each winter for several years, when water and dirt which came down from the hillside and over the wall had frozen on the sidewalk and the street. The particular condition which existed at the time of this collision had been present for three or four weeks immediately before the accident. The testimony is quite sufficient to show constructive notice to the city.

Mr. Moorehead testified that he had been driving his car toward Pittsburgh at a moderate rate of speed experiencing no difficulty whatever with road conditions; he said that with the exception of the icy condition which prevailed at the place of the accident, West Carson Street was almost free of snow and ice. He asserted that he was looking straight ahead, that he did not see this large piece of ice until he was upon it, when immediately his automobile became uncontrollable, leaving its proper side of the highway and colliding with the Fritzky automobile coming from the opposite direction.

The trial court in granting the motion for nonsuit held that the city was not negligent, that "there was no evidence that ridges of snow and ice were permitted to exist or remain on the highway" and that "mere slipperiness arising from a smooth surface of ice and snow does not render the defendant corporation liable on the ground

of negligence", citing *McLaughlin v. City of Corry*, 77 Pa. 109, 113. The learned court overlooked the fact that in that case we reversed the judgment of the court below because the plaintiff there charged, "that through the default of the officers of the city of Corry, the ice and snow had been permitted to accumulate, upon the sidewalk in question, in such manner as to be dangerous to foot passengers, and that by reason thereof, he fell and received the injuries of which he complains. Whether this were so or not, was a question for the jury, and as such the court should have submitted it." We also said in that case, "If the city authorities were negligent in allowing a dangerous obstruction to exist in the public highway, which they could have removed, and the plaintiff was injured thereby, without any fault of his own, the city was undoubtedly liable for the damage which he suffered."

A city is not liable for personal injuries sustained by a fall on a sidewalk, where it appears that the accident was due to the general slippery condition of the street which occurs in all cities in winter time. This is so because it is practically impossible to keep streets and sidewalks free from ice in this climate during the winter season: *Bailey v. Oil City*, 305 Pa. 325, 327.

The instant accident was not the result of a "general slippery condition" of the streets, or the result of a "normal" amount of ice upon the streets. It resulted from an accumulation of ice and snow over a period of weeks, which, because of its size, covered all the sidewalk and half the street, and constituted a dangerous obstruction in the public highway.

We said in *Bailey v. Oil City*, supra: "Where the existence of ice upon the walk results from the city's negligence, as in case of suffering water to flow upon the walk from a broken hydrant *(Decker v. Scranton City,* 151 Pa. 241), or from a defective water pipe *(Dean v. City of New Castle,* 201 Pa. 51), or by reason of the stoppage of a drain *(Manrose v. Oil City,* 178 Pa. 276), it

may be liable for injury sustained thereon whether or not the ice is in ridges." In *Decker v. Scranton City*, supra, we said: "It was certainly its [the city's] duty to construct and maintain suitable ditches and sluices to carry off the water which ordinarily flowed from springs and other sources outside and in the vicinity of the highway. It could not in violation of this duty allow such water to run along the center of or over the road, until there was an accumulation of ice from it which rendered unsafe and obstructed travel thereon, without incurring liability to a party who in consequence thereof sustained an injury. . . . If the water from the broken hydrant came upon and ran over the road as described . . . and the ice complained of was formed by it, the city cannot escape responsibility on the plea that the ice had not 'so accumulated in hills and ridges as to form an obvious physical obstruction to travel' . . . That the road was in a dangerous condition at the time and place of the accident does not admit of serious question. . . . It was a condition which was attributable to the defective construction of the road, in conjunction with the ice which was negligently allowed by the city to form and remain there. The case was for the jury."

We cannot see how the city can escape from the charge of negligence. The evidence adduced, if true, shows that for years there was a considerable fall of water upon the sidewalk and street, and that no effort was made by the city to prevent it, or to carry the water away in a sufficient drain after it had reached the street; that the result was what should be expected, that each winter the water froze on the sidewalk and street, and that at the time of the accident, and for weeks before, a large mass of accumulated ice existed there, which was a dangerous obstruction, and which the city had notice of, but because of its negligence failed to remove.

The question of defendant's negligence was for the jury, and the learned court below erred in refusing to submit it.

Judgments reversed and a new trial awarded.