## Strauch *v.* Scranton, Appellant.

Argued March 5, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH and ROSS, JJ.

*Alexander S. Gorny,* Assistant City Solicitor, with him *Jerome I. Myers,* City Solicitor, for appellant.

*Alfred E. Swoyer,* with him *Harry A. Kolb,* for appellee.

OPINION BY HIRT, J., April 16, 1945:

Plaintiff, a pedestrian, was injured in a fall on the ice in the roadway of Moltke Avenue in Scranton. In this action, tried without a jury, the trial judge found in his favor in the sum of $1,991.20; the court en banc entered judgment, concluding that the facts imposed legal liability on the city. The judgment will be reversed.

Moltke Avenue, a dirt road some distance from the foot of a mountain in an outlying section of Scranton, runs southwardly, upgrade, from its intersection with East Mountain Road. The latter is an improved highway. The natural surface drainage is from the east down the hillside through the lots of owners whose houses front on the east side of Moltke Avenue. The land to the west of the dirt road is unimproved and slopes down to a railroad. Surface water from the higher ground drains on to Moltke Avenue. In freezing weather the roadway, at times, was covered with ice. For about a week prior to plaintiff's injury the weather was mild, alternately freezing and thawing, with some rain. Automobiles passing over Moltke Avenue formed ruts in the ice then on the roadway. Plaintiff on the

morning of January 1, 1943, walked northwardly in the roadway of Moltke Avenue and when a few feet from East Mountain Road slipped in an icy rut and fell. Although he lived in the neighborhood and used the road every day, he did not observe the hazard because of a fall of snow that morning which concealed the ruts in the ice. There were no sidewalks along Moltke Avenue and the roadway was commonly used by pedestrians as a footway. The city had actual as well as constructive notice of the condition of Moltke Avenue under conditions then prevailing. The city had been requested to install a proper drainage system for the benefit of those living on Moltke Avenue but without result. The question here is whether the municipality, under the circumstances of this case, was required to provide a drainage system adequate to prevent the accumulation of ice along the street from surface water naturally flowing upon it from adjoining higher ground.

A city is held to no higher duty than to keep its streets in a reasonably safe condition for use, considering the ordinary requirements of the general public (*Megargee v. Philadelphia*, 153 Pa. 340, 25 A. 1130) and climatic conditions which make it impossible for any city to keep its roadways free from ice at all times. *McCracken v. Curwensville Boro.*, 309 Pa. 98, 163 A. 217. A slippery condition from an accumulation of ice which is general is not sufficient in itself to impose liability either on a property owner or on a city. *Bailey v. Oil City*, 305 Pa. 325, 157 A. 486. A city however may be responsible for injury resulting from an artificial accumulation of ice, as distinguished from that resulting from natural surface drainage. Thus a municipality has been held liable where a mass of ice due to its failure to repair a broken water main was permitted to remain after notice (*Tripp v. Renovo Borough*, 75 Pa. Superior Ct. 417); or because of a broken water hydrant (*Decker v. Scranton City*, 151 Pa. 241, 25 A. 36) or an obstructed drain (*Manross v. Oil City*, 178

Pa. 276, 35 A. 959) or where the source of the water was an open conduit or broken rain spout discharging from abutting property. *Dean v. New Castle*, 201 Pa. 51, 50 A. 310; *Gross v. Pittsburgh*, 243 Pa. 525, 90 A. 365; *Duvall v. City of New Castle*, 74 Pa. Superior Ct. 573; *Julian v. Philadelphia*, 147 Pa. Superior Ct. 323, 24 A. 2d 69.

Where however it has been sought to charge a city with negligence because of its failure to provide adequate drainage for the natural flow of surface water the cases where recovery has been allowed are exceptional. The rule is: "The construction of sewers, in municipalities, for the drainage of surface water, is a matter resting in the discretion of the municipal authorities, and their power in the premises is to be exercised with reference to the existing conditions and the means at their command ...... Its [the municipality's] liability is confined to injuries due to interference with the natural flow of water, faulty construction, and failure to maintain the sewer in proper condition, and free from obstructions that materially affect its use ......": *Siegfried v. So. Bethlehem Borough*, 27 Pa. Superior Ct. 456. See also, *Carr v. The Northern Liberties*, 35 Pa. 324; *Fair v. City of Philadelphia*, 88 Pa. 309; *Kunkle v. Ford City Borough*, 316 Pa. 571, 175 A. 412; *Cooper v. Scranton City*, 21 Pa. Superior Ct. 17; *Diklich v. Johnstown*, 118 Pa. Superior Ct. 283, 180 A. 41. Generally, they who live in terraced subdivisions or on low ground must accept the burden of surface water discharged upon their land and on abutting roads, until such time as the municipality in its descretion moves to relieve them. Ditches alone may not be adequate for the purpose; proper disposal of surface water may require the construction of storm water sewers to carry it away. The cost of such drainage system is a consideration for the municipality in determining whether its discretion in providing relief, shall be exercised.

The line of demarcation between discretionary and mandatory construction of drainage systems by a municipality is determined by the volume of flow and discharge of surface water in each instance. Thus in *McDonough v. Munhall Borough*, 331 Pa. 468, 200 A. 638, the plaintiff was injured by a fall when she slipped on an accumulation of ice on a sidewalk at the foot of a steep grade. Her testimony was that the dangerous condition resulted from melted snow on a terrace which discharged over a retaining wall on to the sidewalk, below, and there froze. It was contended that the borough was negligent because of its failure to construct and maintain a drain or gutter to carry off the water from the terrace. The Supreme Court was unable to find "in the record [such] evidence of an unusual volume of water washing over the retaining wall" as would charge the borough with negligence. And in entering judgment for the borough, notwithstanding the verdict in plaintiff's favor, the Supreme Court said: "It would be unreasonable to require municipalities to construct and maintain gutters or drains to divert from the sidewalks all the water coming from high ground, in view of the many miles of sidewalks abutting such terraces in the various municipalities throughout the State." In *Coleman v. City of Scranton*, 99 Pa. Superior Ct. 3, the plaintiff fell on an icy pavement. The adjoining property fronted on a street on a steep grade. A stone wall extended along the property. It was alleged that water draining from the high ground over the wall and along a curb constructed along its base collected and discharged on to the pavement where plaintiff fell. The complaint was that the city was negligent in failing to construct a gutter to prevent the drainage of water on to the pavement. In affirming the judgment, entered by the court below in favor of defendant n. o. v., we said: "Undoubtedly, there was a certain amount of seepage and drainage that under natural conditions must have gotten from time to time

on the sidewalk, as it was lower than the yard, but there was no proof of an unlawful gathering or disposal of the water, nor that it flowed in such quantity, nor in a way as to charge the city with negligence in failing to control it. It is not practical, and the city is not required to keep all the sidewalks free of water."

*McCracken v. Curwensville Boro.,* supra, on the other hand, is illustrative of those cases where the discharge of surface water on to a much-traveled highway was of sufficient volume in itself to charge the city with negligence in failing to divert it by providing proper drainage. Water dripped from a cliff on to the highway at all seasons of the year; in times of wet weather and melting snow "it flowed *in a steady stream* from this cliff to the highway." An accumulation of ice in the highway from surface water discharged from the cliff, caused plaintiff's injury. Cf. *Fritzky v. Pittsburgh,* 340 Pa. 217, 16 A. 2d 422; *Zieg et vir v. Pittsburgh,* 348 Pa. 155, 34 A. 2d 511.

In our view there is nothing in the findings of fact of the trial judge in the present case, or in the evidence, which establishes, even inferentially, a flow of water of such volume as to charge the city with negligence in failing to provide drainage to carry it away. There is little testimony on the subject and no evidence of a constant flow, or the collection of surface water in streams at any season of the year. Somewhere behind this section of the city there was a mountain but the immediate land was but hilly ground. The conditions complained of resulted from water diffused over a wide area.

Surface water normally did not collect in the roadway but flowed along or across the street to lower levels. Undoubtedly in periods of alternating thawing and freezing temperatures water from the higher land added to the accumulations of ice in Moltke Avenue. But during the winter there was ice on other streets; the difference was but one of degree and ruts in icy

streets are inevitable wherever automobiles travel.

Two authorities, cited in support of the verdict, in reality are not inconsistent with our conclusion. In *Decker v. Scranton City,* supra, the source of the accumulation of ice in the highway was a broken water hydrant and the condition was aggravated by defective road construction. The second head-note to the opinion in that case, to the effect that a city is liable for injury where ice has accumulated "by reason of the neglect to construct and maintain suitable drains to carry off water", is not supported by the text. In *Holbert v. Philadelphia,* 221 Pa. 266, 70 A. 746, the dictum—that a city is chargeable with negligence for failure to construct and maintain suitable drains to carry off surface water—must be read in the light of the facts in that case. The injury to that plaintiff resulted from slipping on an accumulation of ice on a sidewalk in a tunnel. Because of the grade of the tunnel water flowed into it and also dripped from the bridge above. The inlets of the drains provided by the city were inadequate to carry the water away. The danger did not result from natural causes but from faulty construction chargeable to the city.

Perhaps the city should, in this case as the lower court suggests, improve conditions for pedestrian travel on Moltke Avenue but whether by means of an adequate drainage system at the expense of the city or by ordering the construction of sidewalks at the cost of property owners, in our opinion, is a matter within the city's discretion under the evidence in this case.

Judgment reversed and here entered for defendant.