## Kanarkowski, Appellant, *v.* North Braddock Borough.

Argued April 19, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Morris M. Berger,* for appellant.

*Edward I. Roth,* with him *Leo Kostman,* for appellee.

OPINION BY HIRT, J., July 19, 1945:
Plaintiff was seriously injured in a fall on the ice in

the cartway of O'Connell Boulevard in the Borough of North Braddock. The verdict for him in this case was set aside by the lower court and judgment was entered for defendant n. o. v. We are of the opinion that the borough was negligent and that plaintiff is not chargeable with contributory negligence as a matter of law. The judgment will be reversed.

In the light of the verdict these facts appear: O'Connell Boulevard, a paved highway, runs north and south in the borough. On the hill to the west of the boulevard there was an abandoned coal mine which discharged water down a gully—cut into the hillside by the flow—onto the boulevard south of Ravine Street and near the place where plaintiff fell. Defendant's engineer conceded that water flowed from the mine in a "permanent stream" and there is other evidence that the flow was constant and that it at times approached a "creek" in volume. There was but one spillway and catch basin at the foot of the slope to convey this stream into a main sewer. Other outlets in the vicinity were too high in elevation to draw off water which came from the mine. The spillway in question, perhaps, was ordinarily adequate but at times became clogged with debris which washed down the hillside. The catch basin also filled with silt and required occasional cleaning. Over a period of many years, when for these reasons the spillway did not function, water from the mine collected on the boulevard. The borough had constructive notice of this condition, and of its cause, and had received many requests that it reconstruct its drainage system at this place or at least maintain it by keeping it free from obstructions. More than a week before February 21, 1941, the spillway in question had become clogged and water from the mine flowed over the curb and collected in a pool on the boulevard extending from its intersection with Ravine Street northwardly about 150 feet, to a point beyond the catch basin. Within that week a bus driver had com-

plained to the borough of the clogged drain and the flooded condition of the highway. Ice, which formed, covered the entire roadway of the boulevard, between curbs over that area, to a depth varying from one to eight inches. The condition was not general; the other streets in the borough were almost entirely free from snow and ice.

This is not a case where the dangerous condition in a highway resulted from a normal drainage of surface water, diffused over adjoining land. The principle of *Strauch v. City of Scranton*, 157 Pa. Superior Ct. 174, 42 A. 2d 96, and like cases, therefore, cannot relieve the borough from liability. The water, regardless of its source, was of sufficient volume, in itself, to charge the borough with negligence in failing to divert it from the boulevard, a much-traveled highway. Cf. *McCracken v. Curwensville Boro.*, 309 Pa. 98, 163 A. 217. A municipality, with notice, is responsible for a dangerous condition resulting from a broken water main (*Tripp v. Renovo Borough*, 75 Pa. Superior Ct. 417) or an obstructed drain (*Manross v. Oil City*, 178 Pa. 276, 35 A. 959) or an open water pipe (*Dean v. New Castle*, 201 Pa. 51, 50 A. 310). An equally pressing and a constant duty rests upon a municipality to provide adequate drainage for a continuous stream of water which otherwise would discharge on to a highway. What the municipality must do to keep the water off the road depends upon the volume of flow and the other circumstances. Here it was the duty of the borough not only to install such spillways and catch basins as were adequate for the purpose, but also to service and maintain them by keeping them free from debris. Cf. *Decker v. Scranton City*, 151 Pa. 241, 25 A. 36. The neglect of the borough in this latter respect charges it with responsibility for the resulting dangerous accumulation of ice on the highway.

Whether plaintiff was chargeable with contributory

negligence was for the jury. He lived in the borough and was employed as a crane operator in Braddock, a mile and one-half from his home. He worked on a night shift and on February 21, 1941, left his home about 10:30 P. M., but missed a bus, which he intended to take at Ravine Street. He was not due at his work until 11:00 P. M. and had time enough to walk without being hurried. He went down Ravine Street walking on a side path and turned north on to the dirt sidewalk along the west side of O'Connell Boulevard. There was no ice on either of the paths and only little patches of blown snow. The sidewalk ended a short distance to the north of Ravine Street where Bank Way, an alley, entered the boulevard. There were curbs along both sides of the alley at this point and the surface was paved with brick, on an incline, up from the level of the boulevard. The accumulation of ice in the boulevard extended up into the alley to the level of the top of the curb. Plaintiff testified, on observing the ice in the alley: "It slanted—that roadway—and I figured it was too slanted and I would go out in a safer place and stepped down on O'Connell Boulevard." He walked with care, intending to proceed to the traveled portion of the highway, but fell on the slippery ice and was injured after taking two or three steps.

Regardless of actual conditions confronting plaintiff as he approached the alley, he cannot be convicted of contributory negligence in seeking a safer way, even if chargeable with a mistake in judgment. *Green v. Hollidaysburg*, 236 Pa. 430, 84 A. 785. The choice of ways, to reach the foot path on the other side, involved walking either across the ice in the alley, or on the ice in the boulevard and both accumulations are chargeable to the borough. Plaintiff usually rode to his work in a public conveyance; he had no reason for more than casually observing the conditions in the roadway before the day of his injury. There is no evidence of a safer route which he might have taken to his work, by which

he could have entirely avoided the accumulation of ice. It was dark and street lighting in the neighborhood was inadequate.

It is unimportant whether a ridge or the slippery condition of smooth ice caused the fall. Obstructions such as ridges of ice are not necessary to impose liability where the municipality is directly responsible for the accumulation. *Bailey v. Oil City*, 305 Pa. 325, 157 A. 486. The dangerous condition of the roadway and the likelihood of injury, even to one exercising due care, is indicated by the testimony of the driver of an automobile who observed plaintiff lying in the boulevard after his fall. After he stopped his car it started to skid downhill and came to rest only when he turned it to the curb. And this witness was unable to move plaintiff to an automobile without help, because of the slippery condition of the roadway.

The test of contributory negligence is whether a person acted as a reasonably prudent person under the circumstances. It is the duty of a pedestrian to be reasonably watchful for his own safety and to avoid dangers but only such as ordinary prudence will disclose. *Weismiller v. Farrell*, 153 Pa. Superior Ct. 366, 34 A. 2d 45; *Brady v. Philadelphia*, 156 Pa. Superior Ct. 607, 41 A. 2d 355. There was no burden on plaintiff to prove that he was not negligent, and in the light of the favorable inferences from all of the testimony, to which he is entitled under the verdict, he is not chargeable with contributory negligence as a matter of law.

Judgment reversed and here entered for plaintiff on the verdict.