Ventura *v.* Pittsburgh, Appellant, et al.

Argued April 10, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*H. Stewart Dunn,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellant.

*A. H. Rosenberg,* for appellee.

OPINION BY HIRT, J., July 19, 1946:

In this action a verdict was directed in favor of defendant township. The jury found for plaintiff in the sum of $2,500 against the City of Pittsburgh, alone, for personal injuries and damage to his automobile. The city's rules for a new trial and for judgment n. o. v. were discharged and judgment was entered on the verdict. Whether the verdict is excessive is not raised in the statement of questions involved, though discussed in appellant's brief. The appeal goes solely to the refusal of judgment notwithstanding the verdict, and is confined to the questions of appellant's negligence and contributory negligence of plaintiff.

Plaintiff, after midnight in the early morning of January 2, 1944, was driving his automobile eastwardly from Carnegie, Pennsylvania, to Pittsburgh on the Noblestown Road, an improved highway. Almost imme-

diately after crossing the city line after leaving Scott Township plaintiff's car skidded across the highway and struck the corner of a dwelling house on the north side of the road, damaging the car and injuring him. An accumulation of ice on the pavement was the cause of the skidding. The highway, otherwise, for the entire distance from Carnegie to the city line was dry and was entirely free from snow and ice.

Greentree Borough joins the City of Pittsburgh on the south. The dividing line is the center of Noblestown Road. And although this is a State Highway, appellant's testimony admits that it was the obligation of the city to keep its half of the road free from obstructions and in a reasonably safe condition for travel. Abutting the road on the south, in Greentree Borough, there is a steep hill from 200 to 300 feet in height forming a natural water shed. Surface drainage is collected and flows down the slope in two well defined water courses. Water from one of them was discharged at the south curb just east of the city line at the point where plaintiff lost control of his car. The borough had constructed a storm sewer along the foot of the hillside but in periods of alternating freezing and thawing, either the sewer was inadequate to carry off the water or the inlets became clogged with snow and ice. The water then overflowed the curb and ice formed on the pavement. It was this condition of the highway between the borough and the city that caused plaintiff's injury. Plaintiff's testimony is that ice had formed to a depth of 6 to 8 inches at the south curb and, diminishing in thickness, extended northwardly on to the city's half of the highway, three-fourths across the pavement.

The primary cause of the injury was the failure of Greentree Borough to perform its duty under the law. This is not a case where the condition was general nor where the accumulations of ice in the roadway resulted from the natural flow of surface water diffused over the area of the hillside. The principles of *Strauch v. Scran-*

*ton,* 157 Pa. Superior Ct. 174, 42 A. 2d 96, (affirmed, 353 Pa. 10, 44 A. 2d 258) therefore, do not apply. Here the effluent came from a well defined stream which collected surface water from the drainage area and discharged it at the foot of the hill at the edge of the pavement. On these facts it was for the borough to provide the means for diverting the flow from the highway; the borough stands convicted of negligence by its failure to provide a storm sewer adequate for the purpose, or to keep its inlets unobstructed, or both. The duty rests on a municipality to provide drainage for a stream of water which otherwise would discharge on to a highway. Cf. *McCracken v. Curwensville Boro.,* 309 Pa. 98, 163 A. 217. There is a continuing duty thereafter to service and maintain the inlets and catchbasins by keeping them free from debris, ice or other obstructions which prevent the system from functioning. *Kanarkowski v. N. Braddock Boro.,* 157 Pa. Superior Ct. 325, 43 A. 2d 381.

Notwithstanding all of the ice on the pavement resulted from the failure of the Borough to perform its duty, the city is liable, although its negligence was passive merely. The city's defense was on the facts. But in spite of a serious dispute in the testimony, as to whether the ice extended over on to its side of the pavement, that question was resolved in plaintiff's favor by the verdict. The city's first concern was to keep the highway reasonably safe for traffic proceeding westwardly on its side of the road. The pavement was 30 feet wide and if the ice extended over three-fourths of the pavement there was still seven and one-half feet of dry pavement available to westbound traffic. But the city also was bound to anticipate that the ice on only a part of its side of the pavement was a hazard to lawful users of the highway. Obviously the city was powerless to prevent the flow of water from the borough on to the pavement by any drainage system which it had or could build. Under the circumstances the city was obliged either to keep its side of the pavement free from the abnormal accumulations

of ice (Cf. *Fritzky v. Pittsburgh*, 340 Pa. 217, 16 A. 2d 422) or apply cinders or other suitable material to the surface to afford traction. According to the testimony, ice had recurred on this part of the pavement for years. The city had ample time to compel the borough, by an order of court in an appropriate proceeding, to do its duty. Having done nothing, the city must be regarded as having acquiesced in the dangerous condition of its part of the highway, and was chargeable with negligence supporting recovery notwithstanding the borough was primarily responsible. The city has itself to blame for its predicament, with a verdict against it for the whole of plaintiff's damage. The circumstances should have prompted it to bring in the borough as an additional defendant on the issue of liability between the two municipalities.

The question of plaintiff's contributory negligence was for the jury. Plaintiff was traveling at a reasonable rate of speed and the lights on his car were functioning properly. There were no street lights in the neighborhood disclosing the icy pavement. He testified that as he approached the area of the ice it looked like nothing more than a shadow on the pavement along the hillside. He did reduce his speed somewhat but there was nothing to warn him of impending danger. Under the Motor Vehicle Code (Act of May 1, 1929, P. L. 905, §1004, as amended, 75 PS 521) it is the duty of one to drive on his right side of the highway, yet the duty is not inflexible under all circumstances. By the terms of the act one is relieved of prima facie negligence in crossing the center line when overtaking and passing another vehicle, or when "it is impracticable" to travel on the right side of the highway. We cannot say that plaintiff is chargeable with negligence merely because he drove in the middle of the road, with part of his car on the city's side of the highway. The thick accumulation of ice was on the borough side and the jury may have drawn the inference that plaintiff instinctively turned out to avoid it. More-

over, under what appears to be normal conditions, driving in the middle of a highway will not convict one of negligence where, as here, the highway is free from other traffic. Since plaintiff was driving in the middle of the road there was no burden on him to identify the part of the ice—whether on the borough or the city side of the highway—which caused the skidding. The law does not demand the impossible.

Judgment affirmed.