## Nebel, Appellant, *v.* Pittsburgh.

Argued October 4, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Lisle A. Zehner,* with him *Mercer & Buckley,* for appellant.

*Thomas E. Barton,* Assistant City Solicitor, with him *J. Frank McKenna Jr.,* City Solicitor, for defendant-appellee, and *Leon Wald,* for additional defendant-appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 12, 1956:

This appeal resulted from the refusal of the court below, sitting en banc, to take off a compulsory nonsuit which was entered on the ground there was no proof that the defendant municipality was negligent. The suit was originally brought against the City of Pittsburgh, and the original defendant joined Marie Leahy as an additional defendant.

Viewing the evidence in the light most favorable to the plaintiff, as we are required to do (*O'Connor v. Philadelphia Suburban Transportation Company,* 362 Pa. 404, 66 A. 2d 818), the facts are: On the afternoon of January 29, 1952, at approximately four P.M., the plaintiff, then 69 years of age, was injured as a result of a fall on Dagmar Avenue in the City of Pittsburgh. Her fall was caused by a patch of ice which was hidden from her view by a fall of fresh snow less than one inch in depth. Dagmar Avenue is a steep street and the plaintiff was walking uphill on the sidewalk to the home of her daughter, 1634 Dagmar Avenue, where she had been living for approximately a year. The plaintiff testified that she had boarded a trolley car in downtown

Pittsburgh for her home approximately a half hour before the accident and at that time it was not snowing; that it began snowing during the ride home and was still snowing at the time she fell. The sidewalk involved was made of concrete and there was no evidence that it was defective or in a state of disrepair. The plaintiff stated that she was having no difficulty in walking along the sidewalk and that she was the first person to walk on the sidewalk after the snow had commenced to fall; that when she reached a point in front of 1622 Dagmar Avenue, the home of the additional defendant, she suddenly fell. No one witnessed the plaintiff's fall except herself. Immediately next to the property owned by the additional defendant, going uphill, is a vacant lot owned by the City of Pittsburgh. Plaintiff testified that after falling, she discovered ice at the point of her fall underneath the snow, that the ice was rough and had ridges on it and extended "some distance". Plaintiff did not describe how large an area the ice covered, how thick it was, or describe the ridges or give their size. No other witness described the icy condition of the sidewalk on the day in question and there was no evidence whatsoever as to how long the ice had existed at that particular spot preceding the accident. Nor was there any evidence of when any precipitation of snow or rain had occurred prior thereto.

Plaintiff contended at the trial that an unusual drainage condition existed on the vacant lot owned by the defendant city whereon an excessive volume of water drained from the lot out onto the sidewalk and downhill over the sidewalk of the additional defendant; that in periods of cold weather this drainage would freeze, causing an icy condition to exist on the sidewalk, and that this icy condition was what caused the plaintiff to fall. It was not contended that there were structures of any

kind on this lot carrying the water onto the sidewalk or that the water which flowed from it was anything but a natural runoff from rain or snow which fell on the lot and followed the natural downhill lay of the land. The plaintiff testified that she had no knowledge of any drainage problem with respect to surface water coming off the vacant lot and draining over the sidewalk. Mr. Walsh, plaintiff's grandson, testified that approximately half a dozen times he had seen water flowing from the lot onto the sidewalk and at times he had seen it frozen; that he had seen ice on this portion of the sidewalk when there was ice nowhere else on Dagmar Avenue at the time. However, it was developed on cross-examination that the only time Mr. Walsh observed ice at the place in question was when he was unable to drive his car up the hill due to the street being covered with ice and snow. Mrs. Korenich, plaintiff's granddaughter, who had lived at 1634 Dagmar Avenue for a year preceding the accident, testified that she had seen water draining from the lot onto the sidewalk and that she had seen ice form from it. She stated that she had seen this spot wet when the rest of the pavement was dry and that she had seen ice at this spot when there was no ice elsewhere on Dagmar Avenue. She did not say how often she had seen this spot wet or icy, or how much ice or water were present when the rest of the sidewalk was dry, or how long after a rain or snow this portion of the sidewalk remained wet or frozen. The additional defendant, Mrs. Marie Leahy, called by the plaintiff as on cross-examination, testified that she had lived at 1622 Dagmar Avenue for thirty years and during that time water and mud had drained from the higher city-owned lot into the Leahy cellar making it necessary for her to put up bricks and plant hedges which successfully prevented this drainage from entering her home. She also testi-

fied that her sidewalk was installed approximately four and a half years before the accident and that the sidewalk in front of the city-owned property was put in sometime later on, although she could not say exactly when.[1]

The question of the liability of a municipality for the existence of ice or snow upon its sidewalks has been often considered by our appellate courts. A city is not liable for personal injuries sustained by a fall on a sidewalk, where it appears that the accident was due to the general slippery condition of the street which occurs in all cities in wintertime. This is so because of the practical impossibility of keeping streets and sidewalks free from ice in this climate during the winter season: *Bailey v. Oil City et al.,* 305 Pa. 325, 157 A. 486; *Fritzky et al. v. Pittsburgh,* 340 Pa. 217, 16 A. 2d 422. There may be liability, however, where substantial ridges of ice have formed and are allowed to remain for an unreasonable length of time as a dangerous obstruction to travel: *Llewellyn v. Wilkes-Barre,* 254 Pa. 196, 98 A. 886; *Whitton v. H. A. Gable Company,* 331 Pa. 429, 200 A. 2d 644; *Goodman et al. v. Corn Exchange National Bank and Trust Company et al.,* 331 Pa. 587, 200 A. 2d 642. This is not a case of a "general slippery condition" of the streets, requiring for recovery the existence of hills and

---

[1] Plaintiff maintained in the court below, and also in this Court, that the City of Pittsburgh is primarily liable on the theory that it knowingly allowed a dangerous condition to exist on the sidewalk. Plaintiff does not maintain that the additional defendant was in any way negligent and the only issue raised in her statement of questions involved is whether there was sufficient evidence of the city's negligence to go to the jury. Therefore the question of the additional defendant's liability is not before us: Rule 35, Rules of the Supreme Court of Pennsylvania; *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company,* 385 Pa. 394, 402, 123 A. 2d 413.

ridges allowed to remain for an unreasonable length of time. Plaintiff contends that this is a case where surface water frequently froze at but one place and created a slippery, unexpected hazard by reason of the negligence of the defendant city in permitting water to drain from its own property down and across the adjoining sidewalk, and in failing to correct this condition by proper drains.

An excellent exposition of the legal principles applicable to such cases is found in *Strauch v. Scranton,* 157 Pa. Superior Ct. 174, 42 A. 2d 96, affirmed per curiam in 353 Pa. 10, 44 A. 2d 258, and quoted with approval in *Solinsky v. Wilkes-Barre,* 375 Pa. 87, 99 A. 2d 570. There a pedestrian was injured by a fall on an icy rut in an unpaved roadway. The ice was formed by natural surface drainage. There were no sidewalks along the street in question and the roadway was commonly used by pedestrians as a footway. The city had actual as well as constructive notice of the icy conditions of the roadway under conditions then prevailing. In entering judgment for the defendant city, the Court, speaking unanimously through Judge HIRT, said, beginning at p. 176: ". . . A city . . . may be responsible for injury resulting from an artificial accumulation of ice, as distinguished from that resulting from natural surface drainage. Thus a municipality has been held liable where a mass of ice due to its failure to repair a broken water main was permitted to remain after notice (Tripp v. Renovo Borough, 75 Pa. Superior Ct. 417) ; or because of a broken water hydrant (Decker v. Scranton City, 151 Pa. 241, 25 A. 36) or an obstructed drain (Manross v. Oil City, 178 Pa. 276, 35 A. 959) or where the source of the water was an open conduit or broken rain spout discharging from abutting property. Dean v. New Castle, 201 Pa. 51, 50 A. 310; Gross v. Pittsburgh, 243

Pa. 525, 90 A. 365; Duvall v. City of New Castle, 74 Pa. Superior Ct. 573; Julian v. Philadelphia, 147 Pa. Superior Ct. 323, 24 A. 2d 69.

"Where however it has been sought to charge a city with negligence because of its failure to provide adequate drainage for the natural flow of surface water the cases where recovery has been allowed are exceptional. . . Generally, they who live in terraced subdivisions or on low ground must accept the burden of surface water discharged upon their land and on abutting roads, until such time as the municipality in its discretion moves to relieve them. Ditches alone may not be adequate for the purpose; proper disposal of surface water may require the construction of storm water sewers to carry it away. The cost of such drainage system is a consideration for the municipality in determining whether its discretion in providing relief, shall be exercised.

"The line of demarcation between discretionary and mandatory construction of drainage systems by a municipality is determined by the volume of flow and discharge of surface water in each instance. Thus in McDonough v. Munhall Borough, 331 Pa. 468, 200 A. 638, the plaintiff was injured by a fall when she slipped on an accumulation of ice on a sidewalk at the foot of a steep grade. Her testimony was that the dangerous condition resulted from melted snow on a terrace which discharged over a retaining wall on to the sidewalk, below, and there froze. It was contended that the borough was negligent because of its failure to construct and maintain a drain or gutter to carry off the water from the terrace. The Supreme Court was unable to find 'in the record [such] evidence of an unusual volume of water washing over the retaining wall' as would charge the borough with negligence. And in entering judgment

for the borough, notwithstanding the verdict in plaintiff's favor, the Supreme Court said: 'It would be unreasonable to require municipalities to construct and maintain gutters or drains to divert from the sidewalks all the water coming from high ground, in view of the many miles of sidewalks abutting such terraces in the various municipalities throughout the State.' In Coleman v. City of Scranton, 99 Pa. Superior Ct. 3, the plaintiff fell on an icy pavement. The adjoining property fronted on a street on a steep grade. A stone wall extended along the property. It was alleged that water draining from the high ground over the wall and along a curb constructed along its base collected and discharged on to the pavement where plaintiff fell. The complaint was that the city was negligent in failing to construct a gutter to prevent the drainage of water on to the pavement. In affirming the judgment, entered by the court below in favor of defendant n.o.v., we said: 'Undoubtedly, there was a certain amount of seepage and drainage that under natural conditions must have gotten from time to time on the sidewalk, as it was lower than the yard, but there was no proof of an unlawful gathering or disposal of the water, nor that it flowed in such quantity, nor in a way as to charge the city with negligence in failing to control it. It is not practical, and the city is not required to keep all the sidewalks free of water.'

"McCracken v. Curwensville Boro., supra, [309 Pa. 98, 163 A. 217] on the other hand, is illustrative of those cases where the discharge of surface water on to a much-traveled highway was of sufficient volume in itself to charge the city with negligence in failing to divert it by providing proper drainage. Water dripped from a cliff on to the highway at all seasons of the year; in times of wet weather and melting snow 'it flowed *in a steady*

*stream* from this cliff to the highway.' An accumulation of ice in the highway from surface water discharged from the cliff, caused plaintiff's injury. Cf. Fritzky v. Pittsburgh, 340 Pa. 217, 16 A. 2d 422; Zieg et vir v. Pittsburgh, 348 Pa. 155, 34 A. 2d 511."

In the *Strauch* case there was nothing in the evidence which established a flow of water of such volume as to charge the city with negligence in failing to provide drainage to carry it away. Similarly, the evidence in the instant plaintiff's case does not show that the flow of water from the city-owned lot and the ice formed thereby was sufficient in volume to constitute negligence in not constructing drains to abate it. The plaintiff's witnesses who saw this part of the pavement wet while the rest of it was dry did not say how long after the other sidewalks were dry this wet condition continued. Likewise they did not say how long ice would remain on this particular portion of the sidewalk after it had disappeared from other sidewalks, or how thick the ice generally was, or how much ice was present there on the day of the accident. There was little testimony as to volume of the flow of water and accumulation of ice and certainly no evidence that it was a constant flow in a steady stream at any season of the year. In a city with the climate and hilly terrain of the City of Pittsburgh where water from rain and melting snow unavoidably runs across many miles of sidewalks and freezes in the winter, it would be unreasonable to impose liability except upon sufficient proof that the amount of water and ice formed by natural drainage flowing over the sidewalk was so unusual in quantity as to present a substantial risk to pedestrian traffic.

The cases relied on by plaintiff are readily distinguished. In *Casey v. Singer,* 372 Pa. 284, 93 A. 2d 470, the ice formed in a *triangular* defect or depression in the

sidewalk. For at least two years prior to the accident this depression existed and would fill with water whenever rain fell, and in freezing weather became a patch of ice. In *Reedy et vir v. Pittsburgh,* 363 Pa. 365, 69 A. 2d 93, the ice was caused not by natural drainage, but by the freezing of water allowed to flow over the cement surface of the sidewalk from a downspout intended to carry off water from the roof of a house. In addition there was evidence to support a finding that for the four years preceding the accident, this surface water froze during freezing weather and constituted a nuisance menacing the safety of pedestrians. In *Zieg et vir v. Pittsburgh,* supra, the water flowed from a spring and covered the entire sidewalk with water, which condition remained throughout the year with a possible exception of a prolonged drought. In freezing weather ice formed over the entire sidewalk varying in depth from eight to twelve inches. In *Fritzky et al. v. Pittsburgh,* supra, the water flowed over a stone wall and formed a solid cake of ice across the sidewalk and across half the width of the street. The ice extended two hundred and fifty feet along the street and was sixteen inches deep adjoining the wall, twelve inches deep at the curb and from four to six inches deep near the center line of the street.

Judgment and order affirmed.