is to be exercised in granting motions for summary judgment, Deohler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135; and we do not think plaintiff has shown it is entitled to judgment as a matter of law.

Both the plaintiff's and the defendant's motions for summary judgment are denied, and the case is referred to a commissioner of this court for further proceedings.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

**HOWARD INDUSTRIES, Inc., v. UNITED STATES.**

No. 48874.

United States Court of Claims.

Sept. 30, 1953.

Raoul Berger, Washington, D. C., for plaintiff. Friedman, Zoline and Rosenfield, Chicago, Ill., of counsel.

Mary K. Fagan, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant. Donald D. Webster was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

This is an action instituted by plaintiff, Howard Industries, Inc.,[1] under the War Contract Hardship Claims Act,[2] also known as the Lucas Act, for an equitable determination praying for relief from alleged losses suffered in the performance of Contract NOa(s)–1732 entered into with the Navy Department on October 24, 1942, and terminated for the convenience of the Government on July 31, 1944.

On January 27, 1953, three months prior to trial of plaintiff's case, a pretrial conference was held with a Commissioner of this court, and it was agreed by the parties that the issues to be tried included the following:

"(1) The amount of the net loss sustained by plaintiff on the contract sued upon;

"(2) Whether the losses under the contracts in question were incurred without fault or negligence on part of the plaintiff;

"(3) Whether and to what extent plaintiff has received relief under the termination agreement entered into between the parties under date of November 18, 1944;

"(4) Whether plaintiff filed an adequate request for relief within the meaning of Section 3 of the Lucas Act for losses sustained under Contract 1732;

"(5) Whether plaintiff's failure to submit, in accordance with Section 202(b) and 202(c) of Executive Order 9786, U.S.Code Cong. Service 1946, p. 1848, a statement of the contract price, of the cost of performance, and of the profit and loss on each contract is a fatal defect in plaintiff's claim or affects the amount of plaintiff's claim;

"(6) Whether plaintiff's failure to make a statement in detail as to each loss claimed of the facts and circumstances which caused the loss and of the period or periods of time during which the loss occurred, in accordance with Section 202(j) of

---

1. Successor to Howard Aircraft Corporation in whose name the various contracts mentioned herein were entered into.

2. Public Law 657, 79th Cong., 2d Sess., Ch. 864, 60 Stat. 902, as amended by Section 37 of Public Law 773, 80th Cong., 2d Sess., 41 U.S.C.A. § 106 note.

Executive Order 9786, is a fatal defect in plaintiff's claim or affects the recoverable amount of plaintiff's claim;

"(7) Whether the plaintiff in failing to make a statement, supported by reasonable detail, showing that the loss or losses claimed occurred through no fault or negligence on the claimant's part, as required by Section 202(k) of Executive Order 9786, is a fatal defect in plaintiff's claim or affects the recoverable amount of plaintiff's claim."

At the subsequent trial before Commissioner Cowen, plaintiff produced one witness—the accountant who had prepared an audit from plaintiff's books and records in the summer of 1950. After introduction of the audit and the testimony of plaintiff's accountant, plaintiff's counsel stated that he had decided not to offer any evidence on the question of plaintiff's fault or negligence in the performance of the contract in question, since in his opinion the burden was upon defendant to establish in the first instance that plaintiff had been guilty of fault or negligence.

Upon the close of plaintiff's proof, defendant moved under Rule 49(b), 28 U.S.C.A., for a dismissal of the petition on the following grounds:

"(a) that the letters and documents which plaintiff relied on as constituting written requests for relief under Contract 1732 were not sufficient within the meaning of Section 3 of the Lucas Act;

"(b) that by failing to provide a statement of the contract price, the cost of performance and the profit or loss on each Government contract, and by failing to show the loss sustained on the contract on which the claim was based, plaintiff had not complied with the requirements of the Lucas Act, Executive Order 9786, or the order of this Court pre-

scribing the procedure to be followed in Lucas Act cases;

"(c) that plaintiff, by failing to offer evidence showing that the losses claimed by it were incurred without its fault or negligence, had not met the burden imposed upon it by the Lucas Act or Executive Order 9786; and

"(d) that under the settlement agreement of November 18, 1944, plaintiff was paid in full for all losses or uncompensated contract costs for which it had made written requests for relief."

After making detailed findings of fact relative to the evidence offered by plaintiff, the Commissioner recommended that defendant's motion be granted and the petition dismissed on the ground that plaintiff had failed to discharge the burden imposed upon it in Section 3 of the Lucas Act by showing, with such reasonable accuracy as the books and records would have permitted, the amount of its net loss *under the contract on which the claim was based.* The Commissioner did not pass on the other grounds for dismissal urged by defendant.

■ Section 3 of the Lucas Act provides in part as follows:

"Claims for losses shall not be considered unless filed with the department or agency concerned within six months after the date of approval of this Act, *and shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945, * * *.*" [Italics supplied.]

Plaintiff concedes that it had on file with a department or agency of the Government prior to August 14, 1945, a request for relief with respect to only one of its several war contracts, i. e., NOa(s)–1732. Unless plaintiff has shown with reasonable accuracy, and upon the basis of all the evidence within its possession bearing upon the matter,[3] the amount of the

---

3. Section 2(b) of the Lucas Act provides: "Every claimant under this Act shall furnish to the department or agency concerned any evidence within the possession of such claimant bearing upon the matters referred to in subsection (a) of this section."

loss it suffered in the performance of Contract NOa(s)–1732, the petition must be dismissed since, on the facts and the law, plaintiff would have shown no right to recover under the provisions of the Lucas Act.

█ It is plaintiff's position that since this case comes before the court on defendant's motion to dismiss under Rule 49(b), plaintiff's evidence and all the inferences fairly to be drawn from it must be considered by this court in the light *most favorable to plaintiff*. Schad v. Twentieth Century-Fox Film Corp., 3 Cir., 136 F.2d 991, 993. Plaintiff urges that under this rule of law, the record before the court sufficiently establishes (1) that plaintiff suffered a net loss as a result of its performance under all its war contracts with defendant, and (2) that all of such net loss has been properly segregated or allocated to Contract NOa(s)–1732. Plaintiff accordingly requests that defendant's motion be denied and the case remanded for further hearing before the Commissioner. At the outset we must decide the duty of this court on a motion to dismiss under Rule 49(b) of this court's Rules.

Rule 49(b) provides in part as follows:

"* * * Promptly after the plaintiff has completed the presentation of his evidence, the defendant, without waiving its right to offer evidence in the event the motion is not granted, may move the Commissioner for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to recover. If the Commissioner is not clearly convinced that the motion should be granted, he shall overrule the motion and the defendant shall thereupon proceed with the presentation of its evidence. If the Commissioner is convinced, upon a consideration of both the facts and the law, that the motion should be granted, he shall make and file his findings of facts material to the issues raised by the motion and his recommendation for conclusions of law thereon. Thereafter all proceedings shall be the same as in a case where a Commissioner's report is filed upon the entire evidence produced by both parties. The Court may render judgment against the plaintiff, or may decline to render any judgment until the close of all the evidence.

"Unless the Court in its order for dismissal otherwise specifies, a dismissal under this subdivision * * operates as an adjudication upon the merits."

The above rule is based upon Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which reads in pertinent part as follows:

"* * * After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

The Third Circuit Court of Appeals in the Schad case, supra, has held that on a motion under Rule 41(b) the function of the court is the same as on a motion to direct in a jury case; that the court does not weigh the evidence but merely decides whether there is evidence which would support a judgment for the plaintiff. (This view is expressed in the Schad case relied on by plaintiff.) Several other circuits adhere to a different view,

however, which appears now to represent the weight of authority, i. e., that the judge, in an action tried by the court without a jury, is the trier of the facts; that his function is not the same on a motion under Rule 41(b) as on a motion for a directed verdict where the jury is the trier of the facts, and that the judge should weigh the evidence, draw the proper inferences therefrom, and, if he finds the evidence insufficient to make out a case for the plaintiff, render a decision for the defendant on the merits. We agree with this view. An excellent analysis of the function of the court in passing upon a motion under Rule 41(b) is contained in the court's opinion in United States v. United States Gypsum Co., D.C.D.C.1946, 67 F.Supp. 397, reversed on grounds other than those with which we are concerned herein, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746. In that case the defendant had moved for dismissal of the petition under Rule 41(b) and the Government, plaintiff therein, had contended, as does plaintiff herein, that the sole question presented to the judge by such a motion was one of law, i. e., whether the plaintiff's evidence, and all the inferences fairly to be drawn from it, "considered in the most favorable light," [67 F.Supp 417] make out a *prima facie* case for relief. Such a contention had prevailed in the Schad case relied on by plaintiff herein, but Chief Judge Stephens, speaking for the court in the Gypsum Co. case, supra, specifically disagreed with this view, as have courts of several other circuits, and stated in part as follows:

"The so-called *prima facie* case rule governing the action of judges in jury trials rests upon the established division of functions, in such proceedings, between jury and judge, whereby the jury tries the facts and the judge determines the law. The judge, before verdict, has no function as to the facts except in the limited sense of determining whether there is 'a case for the jury.' If there is substantial proof of the elements of the plaintiff's charge, the case must go to the jury, even if the judge, if he were the trier of the facts, would himself decide the case against the plaintiff. Putting it otherwise, a judge in a jury trial does not withdraw a case from the jury on a defendant's motion at the end of the plaintiff's case unless the judge can fairly say that no reasonable juryman could find for the plaintiff. [Citing cases.]

"But in an action tried without a jury the judge is the trier of both the facts and the law. This fundamental distinction between jury and non-jury trials should not be ignored; and if the reason for the jury trial practice does not exist in non-jury trials, where the judge is the trier of the facts, the jury trial practice ought not to be applied but should give way in favor of a practice consistent with the actual function of the judge in non-jury cases and consistent with the spirit of the Federal Rules of Civil Procedure. Rule 1 expressly provides that the rules 'shall be construed to secure the just, speedy, and inexpensive determination of every action.' Therefore, a court should dispose of a case at the first opportunity which is appropriate under the rules and in accord with the rights of the parties. When a court sitting without a jury has heard all of the plaintiff's evidence, it is appropriate that the court shall then determine whether or not the plaintiff has convincingly shown a right to relief. It is not reasonable to require a judge, on motion to dismiss under Rule 41(b), to determine merely whether there is a *prima facie* case, such as in a jury trial should go to the jury, when there is no jury—to determine merely whether there is a *prima facie* case sufficient for the consideration of a trier of the facts *when he is himself the trier of the facts.* * * * A plaintiff who has had full opportunity to put on his own case and has failed to convince the

judge, as trier of the facts, of a right to relief, has no legal right under the due process clause of the Constitution, to hear the defendant's case, or to compel the court to hear it, merely because the plaintiff's case is a *prima facie* one in the jury trial sense of the term." 67 F.Supp. at pages 417, 418.

The court concluded that under a 41(b) motion, it was the duty of the court to weigh the evidence in the same manner as if both sides had introduced evidence and closed, and, after drawing the proper inferences therefrom, to render a decision on the merits for the defendant if it found the evidence insufficient to make out a case for the plaintiff. See also Allred v. Sasser, 7 Cir., 170 F.2d 233; Defense Supplies Corp. v. Lawrence Warehouse Co., D.C., 67 F.Supp. 16, affirmed 9 Cir., 164 F.2d 773, set aside on other grounds, 9 Cir., 168 F.2d 199.

Applying the principles laid down in the Gypsum Co. case, supra, we shall first determine whether the record made by plaintiff is sufficient to establish with reasonable certainty and on the basis of all the available evidence, the amount of loss suffered by plaintiff in the performance of Contract NOa(s)–1732 with respect to which we shall assume, without deciding, that it had a proper request for relief pending prior to August 14, 1945.

Between December 1, 1940, and November 30, 1944, plaintiff was engaged in work on five different government war contracts totaling more than $10,000,000 in sales, and on non-government work totaling more than $958,000 in sales. (Finding 21.) One of the government contracts was a cost-plus-a-fixed fee contract with the Army, the others were all Navy contracts. The first Navy contract was completed in 1942. (Finding 4.) The next Navy contract, No. NOa(s)–1732, was entered into in 1942 and was for NH–1 airplanes (blind-flying trainers) at a unit price of $16,972.99, and separate parts to 25 percent of the dollar value of the plane. The number of planes called for was changed several times, the final total being 320 planes. In 1943 Contract NOa(s)–236 was entered into for the manufacture of 50 GH–2 (ambulance passenger cargo) planes at a unit price of $14,570.22, and separate parts to 20 percent of the dollar value of the planes. After manufacturing a number of these planes, plaintiff protested to the Navy that the unit price per plane was too low and resulted in substantial losses. On April 3, 1944, a formal fixed-price-contract, No. NOa(s)–1287, was entered into for the same type of GH–2 plane (80) at a unit price of $19,700 and separate parts to 25 percent of the dollar value of the planes. (Findings 7 and 26.)

On July 31, 1944, Navy Contracts 236, 1287, and 1732 were terminated for the convenience of the Government and a new contract, No. NOa(s)–4395, was negotiated in which the three terminated contracts were all consolidated. Portions from that consolidated contract are set forth in Finding 10. Pursuant to the Contract Settlement Act of 1944, 41 U.S. C.A. § 101 et seq., plaintiff and the Government entered into a supplemental agreement on November 18, 1944, for the full payment and complete settlement of all the contractor's rights and the Government's obligations under the three contracts as consolidated.

The settlement agreement provided for the payment to the contractor of $4,012,-827, less offsets for the balance of advances amounting as of October 3, 1944, to $3,871,395.43, or the payment of the net sum of $141,431.57, plus various other amounts in connection with the settlement of the Navy contracts.

It is plaintiff's contention that after and notwithstanding the above settlement, it suffered an over-all net loss for which the settlement did not compensate it of $183,573.69 and that the evidence in this suit provides a reasonable basis for allocating *all* of that loss to its operations under contract NOa(s)–1732 with respect to which it had on file a proper request for relief.

Plaintiff's records were not kept so as to show the costs incurred on each of the

Navy contracts nor on plaintiff's private business. The sales journals, however, showed the amount received on sales for private account and on sales to the Government, as well as the number of planes delivered each year under each government contract.

Plaintiff's accountant determined the approximate amount of costs applicable to private business by determining the ratio of non-government sales to total sales and prorating the total costs between the two accounts on that ratio. After making that allocation, plaintiff's accountant next determined that the total net loss on the four Navy contracts (after allowing for amounts paid under the settlement agreement) amounted to $364,096.96. From this figure he deducted the $180,523.27 fee received by plaintiff under the Army contract and arrived at the sum of $183,573.69 as the net loss incurred during the four-year period of performance of the four Navy contracts.

Plaintiff did not attempt to show the number of planes delivered under each contract although such information was available from the sales journals. Frequent changes in specifications and unit prices during 1943 and 1944 would have made it difficult for plaintiff to have ascertained the exact prices received for the planes delivered under each of the contracts, but the original unit prices shown in the three contracts were readily available.

The usual books and records for a company such as plaintiff's were complete and in existence for the period involved in this suit. In addition to ledgers and journals, there were a number of file boxes containing the original records concerning work under these contracts, including checks, purchase invoices, sales invoices, etc. These boxes were arranged in order and there was a catalog of the papers contained in the different file boxes. Plaintiff's accountant testified that he was able to find original records to verify entries in ledgers or journals in each instance where he decided to make a check.

In contending that the record shows that all of the net loss in question was allocable to contract NOa(s)–1732, plaintiff has had to indulge in a number of assumptions entirely unsupported by any evidence and which, we think, were susceptible of actual proof. Plaintiff says that it is reasonable to conclude on the record that it made money on contract 1287, and lost on contracts 236 and 1732. Plaintiff has not *proved* whether or not it made or lost money on contract 1287. Furthermore, on the record before us, it would be as reasonable to conclude that most or all of the net loss finally resulting from its war contracts was attributable to contract No. 236 as to No. 1732.

■ If no records were in existence from which a reasonably accurate basis for an allocation of loss could be shown, we would be inclined to look with more favor upon reasonable assumptions if justified by all the facts and circumstances with respect to the matter of allocation of losses. Here, however, plaintiff admits that it has reasonably complete and available records and plaintiff has neither produced nor used those records in the proof of its case. The statute places upon plaintiff the burden of proving the amount of the loss incurred on the contract which is the basis for its claim, and where a problem of allocation is involved, plaintiff must prove by means of the best evidence available a sound basis for the allocation contended for. This the plaintiff has not done and accordingly the record contains no evidence from which the court can even approximate the amount of plaintiff's loss, if any, under the contract on which the claim is based. Any attempt to do so on the basis of the record in the case would be pure speculation and a guess. Since this is basic to plaintiff's right to recover under the Lucas Act, it appears that upon the facts and the law, plaintiff has shown no right to recover and its petition must be dismissed under Rule 49(b).

■ In view of our holding that plaintiff has failed to establish with any

reasonable certainty the amount, if any, of the loss incurred on the contract made the basis of its claim, it is not necessary for us to discuss in detail the defendant's other grounds for dismissal of plaintiff's suit. However, we wish to discuss briefly plaintiff's contentions with respect to the burden of proving the contractor's freedom from fault and negligence under the Lucas Act. The Act provides that war contractors may recover for losses incurred "without fault or negligence on their part in the performance of [war] contracts or subcontracts." From the plain language of the act, it appears to us to be clear that the burden of proof in the first instance, and the risk of nonpersuasion was on the plaintiff. It is true, as plaintiff points out, that such proof might well be very perfunctory until the defendant had produced its evidence of plaintiff's negligence. It is also true that a *prima facie* case of lack of fault or negligence may be held to be established, if, on the completed record, it does not appear that plaintiff was negligent. McCracken v. Curwensville Borough, 309 Pa. 98, 163 A. 217, 222, 86 A.L.R. 1379. In the instant case, however, plaintiff has not been content to let the record speak on the matter of fault or negligence. Plaintiff alleged in its petition freedom from fault or negligence. In pretrial proceedings before a Commissioner of this court, plaintiff's counsel stated that he would produce a witness, familiar with the company's operations under the contracts who would testify that the work had been performed in an efficient manner and without negligence. At the trial of the case, plaintiff announced that it would produce no such witness or any other evidence on the question of fault or negligence. Thus, on the basis of the plaintiff's own statement, we must assume that the record contains nothing from which we might find or even infer the non-negligent character of plaintiff's work, and thus we have no alternative but to hold that plaintiff has failed to assume the initial burden imposed upon it by the Act. While the burden of establishing a *prima facie* case of freedom from fault or negligence in some of these Lucas Act cases may be slight, the statutory requirement that only those plaintiffs may recover whose losses were not due to their negligence, is an important one. As pointed out by plaintiff, Congress could have clearly placed the initial burden on defendant by putting this requirement in the form of a proviso or exception barring recovery where fault appeared, but Congress did not do so. The statute as a whole is a generous and equitable one and we see nothing inequitable in the requirement that plaintiff itself establish a *prima facie* case of its freedom from negligence with respect to the losses it now wishes to recoup from the Government. In addition to this, we think that in proceedings for relief such as the Lucas Act granted, it is right and just that the claimant should be required to show freedom from fault or negligence with respect to the claimed loss.

Plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.